IN the INTEREST OF A.R.W.,
a minor Child,

and Concerning B.J.W., Petitioner–
Appellant and Cross–Appellee,

and

D.L.K., Respondent–Appellee
and Cross–Appellant.

No. 93CA0676.

Colorado Court of Appeals,
Div. V.

Sept. 8, 1994.

As Modified on Denial of Rehearing
Dec. 29, 1994.

Certiorari Granted Aug. 28, 1995.

Certiorari Denied as Moot Oct. 27, 1995.

Hilary Holland, Westminster, for petitioner-appellant and cross-appellee.

A. Daniel Rooney, Aurora, for respondent-appellee and cross-appellant.

Opinion by Judge ROTHENBERG.

In this action arising under the Uniform Parentage Act, petitioner, B.J.W., (mother) appeals from the order of the trial court granting the guardian ad litem's motion to modify visitation and from a separate order granting in part father's motion to amend judgment. Respondent, D.L.K., (father) cross-appeals from the portion of the latter order denying his motion to amend judgment. We affirm in part, reverse in part, and remand for further proceedings.

The mother filed a paternity action after the birth of a son, A.R.W. During the paternity proceedings, the court appointed a guardian ad litem (GAL) to represent the child's interests. D.L.K. admitted paternity, and, on November 9, 1990, the court entered permanent orders awarding sole custody of the child to mother and ordering father, *inter alia*, to pay child support. The court also established a visitation schedule.

In January 1991, the GAL filed a motion for substitution of counsel, seeking to withdraw and to substitute another GAL in her place. The court granted the motion without stating why the continuing appointment of a GAL was necessary.

In December 1991, the new GAL filed a motion to modify visitation claiming, *inter alia*, that: (1) after the entry of permanent orders, father did not exercise his visitation rights because of friction between the parties; (2) in March 1991, the father initiated contact with the GAL who was able to facilitate the resumption of visitation between him and the child; (3) the father and the child are interacting very well; (4) it is in the child's best interest to continue regular visitation with his father; and (5) the mother has opposed any visitation between father and the child. The GAL also proposed a revised visitation schedule.

The mother filed a motion to strike the GAL's motion for modification of visitation and to terminate the appointment of the GAL, claiming that because the GAL was neither a party to the case nor counsel for the child, the GAL lacked standing to file a motion to modify visitation after the entry of permanent orders. The court denied the mother's motion.

The mother also filed motions to modify child support and to issue contempt citation for the father's failure to comply with the court's earlier order.

On February 12, 1993, the court held a hearing on the GAL's motion to modify visitation and on the mother's motion to modify child support. At the conclusion of the hearing, the court granted the GAL's motion and established a revised visitation schedule. It also increased child support.

Thereafter, the father filed a motion to amend judgment asking the court to reduce the amount of child support awarded. For the first time, he also asked the court to award him the income tax exemption for the child. The trial court denied the father's motion to reduce child support, but awarded him the income tax exemption on alternative years.

In April 1993, following a hearing, the court denied the mother's motion to terminate the GAL, finding that: (1) under the Uniform Parentage Act, the child is a party to the action; (2) the court may modify per-

manent orders; (3) an analogy exists between this case and cases arising under the domestic relations statute which provides that orders involving the minor child, such as support, visitation, and custody may be modified; and (4) it is appropriate to have a GAL so the child's interests as a party are protected.

I.

The mother first claims the trial court erred in granting the GAL's motion to modify visitation. More specifically, she claims that: (1) a GAL is not a party to a paternity proceeding; and (2) there is no statutory basis allowing the appointment of the GAL to continue past entry of permanent orders.

A.

■ We agree with the mother's first contention that the GAL was not a party to the paternity proceeding.

Colo.Sess. Laws 1987, ch. 138, § 19–4–110 at 796, in effect during the paternity proceedings, provides in pertinent part:

> The child *shall* be made a party to the action. *If he is a minor, the court may appoint a guardian ad litem.* The child's mother or father may not represent the child as guardian or otherwise. The natural mother, each man presumed to be the father ... and each man alleged to be the natural father shall be made parties.... (emphasis added)

Thus, at the time of this paternity proceeding, the child was an indispensible party. This is no longer the case. *See* § 19–4–110, C.R.S. (1994 Cum.Supp.) ("The child *may* be made a party to the action."). *See also* C.R.C.P. 17(c).

■ Merely naming an individual in a petition or complaint does not make the person a party to the action; to be a true party, that person must be competent to sue and have the right to control the proceedings, to defend, to present and cross-examine witnesses, and to appeal in his or her own right. *People in Interest of E.E.A.*, 854 P.2d 1346 (Colo. App.1992).

In a paternity proceeding, a GAL is appointed for the sole purpose of representing the child's best interests. And, while the child is a party, the GAL does not have the right to control the proceedings, to defend the action, or to appeal in his or her own right.

Nor are we persuaded that § 19–1–111(3), C.R.S. (1994 Cum.Supp.), compels another result. Although that section, when read in isolation, permits the court appointed guardian ad litem for the child to "participate in all proceedings as a party ...," both §§ 19–1–111(1) and (2) specifically limit the appointment of such guardian ad litem to certain dependency or neglect cases or cases brought under the "School Attendance Law of 1963." We conclude that the statute, when read as a whole, was intended to apply only to a guardian ad litem appointed in the specified dependency or neglect actions and school attendance actions, not to a guardian ad litem appointed in a paternity action.

Thus, we conclude that a GAL is not a party in a paternity action.

B.

The mother next claims there is no statutory basis for the appointment of the GAL to continue past the entry of permanent orders. We conclude that the Uniform Parentage Act is ambiguous as to the length of such GAL's appointment.

The Act does not define the role of the GAL in paternity proceedings or set the length of time the GAL is to serve. *See* § 19–4–101, et seq., C.R.S. (1994 Cum.Supp.). In fact, the only specific reference to a guardian ad litem in a paternity proceeding is that in § 19–4–110 quoted above.

The role of the GAL in paternity actions may be contrasted with that in dependency and neglect proceedings or dissolution of marriage actions.

Section 19–3–203, C.R.S. (1994 Cum.Supp.) defines the role of the GAL in a dependency and neglect proceeding and provides that the GAL shall:

> [M]ake such further investigations as the guardian ad litem deems necessary to ascertain the facts and shall talk with or

observe the child involved, examine and cross-examine witnesses ... make recommendations to the court concerning the child's welfare, appeal matters to the court of appeals or the supreme court, and *participate further in the proceedings to the degree necessary to adequately represent the child.* (emphasis added)

In *People in Interest of M.C.P.,* 768 P.2d 1253 (Colo.App.1988), a dependency and neglect action, the court considered the issue of when the GAL's appointment terminates. After recognizing the Children's Code was ambiguous on this point, the court concluded that the extended appointment of a GAL in a dependency and neglect proceeding was necessary to protect the health and welfare of the child. Thus, in *M.C.P.,* the court held that the appointment of the GAL *in a dependency and neglect action* continues until entry of the final decree of adoption or until the juvenile court's jurisdiction is terminated. *See* § 19–1–111(4), C.R.S. (1994 Cum.Supp.).

In dissolution actions, § 14–10–116, C.R.S. (1994 Cum.Supp.) governs the appointment of a GAL and provides that:

The court may, upon the motion of either party or upon its own motion, appoint an attorney to represent the interests of a minor or dependent child *with respect to custody, support, and parenting time....* (emphasis added)

Thus, in dissolution actions, the specific purpose of appointing an attorney to represent the child is to determine and recommend the available alternatives regarding custody, support, and parenting time that are in the best interests of the child. *See In re Marriage of Barnthouse,* 765 P.2d 610 (Colo. App.1988).

In contrast to the more specific language contained in the Dissolution of Marriage Act, the Uniform Parentage Act provides only that the court "may appoint a guardian ad litem." It does not authorize the appointment of a GAL to continue past the determination of paternity. Nor does a child in a paternity action normally need protection from his or her own parents, as is frequently the case in dependency and neglect actions.

■ We therefore hold that, absent special circumstances, once a determination of paternity has been made and permanent orders have been entered resolving custody, child support, and parenting time, the appointment of the GAL terminates. We perceive no reason why the child and parents should suffer the continued expense and the invasion of privacy occasioned by the indefinite appointment of a GAL.

■ We also recognize that §§ 19–4–116 and 19–4–119, C.R.S. (1994 Cum.Supp.) give the trial court continuing jurisdiction later to modify or revoke an order concerning, *inter alia,* child support payments, custody, or guardianship of the child, or parenting time privileges. Thus, we recognize that there may be limited instances when such issues are raised after the entry of permanent orders, and the court, on its own motion or by motion of a party, may conclude that the appointment of a GAL is necessary for a limited purpose and duration to represent the interests of the child. However, the appointment of a GAL after the entry of permanent orders should not be done as a matter of course.

## II.

■ Applying these principles to the circumstances before us, we next address and reject the mother's contention that the court erred in granting the GAL's motion to modify visitation.

Here, at the time the court ruled on the GAL's motion, it had subject matter and personal jurisdiction and each party was represented by counsel. And, here, the father contacted the GAL to facilitate the resumption of visitation between him and the child. Thus, in effect, the motion to modify visitation was instigated by one of the parties' own conduct, and it would serve no useful purpose to vacate the order and require the father now to file an additional, identical motion to modify visitation.

Since, under these particular circumstances, the trial court's ruling on the merits of the motion to modify visitation is fully supported by the record, we conclude that

the court did not abuse its discretion in entering the revised visitation order.

### III.

■ Next, mother claims the trial court erred in granting father's motion to amend the judgment to award him the income tax exemption in alternate years and asserts that the court was required to hold a hearing before ruling on that motion. We disagree.

Section 14–10–115(14.5), C.R.S. (1994 Cum. Supp.) provides:

> Unless otherwise agreed upon by the parties, the court shall allocate the right to claim dependent children for income tax purposes between the parties. These rights shall be allocated between the parties in proportion to their contributions to the costs of raising the children. A parent shall not be entitled to claim a child as a dependent if ... claiming the child as a dependent would not result in any tax benefit.

This statute became effective on August 1, 1992, and therefore is dispositive of the court's ruling made on February 12, 1993.

At the hearing on mother's motion to modify child support, the court made findings as to the parties' respective incomes and, based on those incomes, determined the father's support obligation to be 61.9% of the total amount paid. Thus, the court's award of the income tax exemption to the father in alternate years complies with the requirements of § 14–10–115(14.5).

In reaching this conclusion, we reject mother's contention that the court was required to hold an additional hearing before amending the judgment. The court had already heard testimony concerning the parties' incomes and had determined the percentage of each parties' contribution towards the costs of raising the child. Based on that testimony, the court could conclude that father would receive a tax benefit from the exemption award.

### IV.

#### Cross–Appeal

■ On cross-appeal, the father argues that the trial court erred in its construction of § 14–10–115(10)(a)(II), C.R.S. (1994 Cum. Supp.) by refusing to adjust his monthly gross income by the amount of spousal maintenance he pays to his former wife. We agree.

The statute provides in pertinent part:

> For the purposes of subsections (3) to (14) of this section, 'adjusted gross income' means gross income less preexisting child support obligations and less alimony or *maintenance actually paid by a parent*.... (emphasis added)

This issue presented is one of first impression in Colorado, that is, whether "maintenance actually paid by a parent" under § 14–10–115(10)(a)(II) includes payments made by a parent to a former spouse, as father contends, or whether it is limited to payments made to the mother of the child in the paternity proceedings before the court. We hold that the statute includes *all* maintenance payments made by a parent.

■ When the language of a statute is plain and its meaning is clear, the court must interpret it as written. *Hohn v. Morrison,* 870 P.2d 513 (Colo.App.1993). Here, the statute does not state that only payments made to the mother of the child in the paternity proceeding may be deducted. We therefore reject the mother's argument that this court should read such a limitation into the statute. *See In re Marriage of Eze,* 856 P.2d 75 (Colo.App.1993).

Since, here, we are unable to determine from the limited record before us whether the father "actually paid" any money to his former wife, we remand the matter to the trial court for a factual determination of whether the father made payments to his former spouse, and the amounts of those payments. If the father shows on remand that he made such payments, the trial court should deduct that amount from his adjusted gross income.

### V.

The father also claims the trial court erred in modifying the child support order of November 9, 1990, because the mother failed to

show a change of circumstances sufficient to warrant a modification. However, in view of our conclusion above that a remand is necessary, the issue may be raised with the trial court.

Further, if the trial court determines on remand that the father is entitled to a deduction from his adjusted gross income for maintenance payments, it also shall determine whether any other adjustments are required, such as the amount of child support payable and the entitlement to the income tax exemption.

The order is reversed, and the cause is remanded with directions to the trial court to conduct an evidentiary hearing to determine whether the father made maintenance payments to his former wife and, if so, to recalculate his adjusted gross income and to make any other necessary recalculations. The order is affirmed in all other respects.

NEY and CASEBOLT, JJ., concur.