In re the MARRIAGE OF Carol
Linton FINER, Appellant,

and

Joseph P. Finer, Appellee.

No. 94CA1562.

Colorado Court of Appeals,
Div. I.

Feb. 22, 1996.

As Modified on Denial of Rehearing
May 16, 1996.

Quade, Fonata & Bonin, P.C., Barbara Quade, A. Elizabeth Henson, Denver, for Appellant.

Cox, Mustain–Wood & Walker, Mary Jane Truesdell Cox, Littleton, for Appellee.

Opinion by Judge CRISWELL.

Carol Linton Finer (wife) appeals from the permanent orders entered in conjunction with the decree dissolving her marriage to Joseph P. Finer (husband). We affirm in part, reverse in part, and remand with directions.

The parties, who were married in 1987 and separated in 1992, have one child. Temporary sole custody of the child was granted to wife, but after two custody evaluations were performed, husband was awarded permanent sole custody.

Wife was a homemaker during the marriage, but planned to resume her premarital teaching career after the dissolution. At the time of the hearing before the trial court, she was contemplating taking a position on the east coast.

Consequently, the trial court's orders contained alternatives with respect to parenting time, child support, and maintenance to address wife's possible move out of state or, on the other hand, her continued residence in Colorado. However, because wife ultimately moved out of state, any error with respect to the alternative order has been rendered moot. Similarly, the issue respecting the order for payment of private school tuition is also moot because husband enrolled the child in public school. *See In re Marriage of Hartley,* 886 P.2d 665 (Colo.1994) (courts will not render opinions on issues that have become moot because of later events). Thus, we limit our review to the orders applicable to wife in the event of her move outside Colorado.

## I.   CUSTODY AND VISITATION

### A.

Wife first contends that, because the trial court failed to make a specific finding that the award of sole custody to husband was in the child's best interests, its findings do not support the custody determination. We disagree.

The best interests of the child dictate the outcome of any custody dispute. *In re Marriage of Lester,* 791 P.2d 1244 (Colo. App.1990). To determine what constitutes the best interests of a child, the court must look to all relevant factors, including the thirteen statutory factors listed in § 14–10–124(1.5), C.R.S. (1987 Repl.Vol. 6B). *In re Marriage of Hartley, supra.* Although specific findings as to each factor need not be made, the findings must be sufficient to allow the reviewing court to determine that the decision is supported by competent evidence. *In re Marriage of Dickman,* 670 P.2d 20 (Colo.App.1983).

Here, in its lengthy permanent orders, the trial court initially recognized that one of the issues presented to it was a "[d]etermination of what is in the best interest of the minor child pursuant to C.R.S. § 14–10–124...." It then made numerous findings relating to the statutorily relevant factors. The court found, *inter alia,* that wife was unable to read her child's needs accurately; that husband was able to foster the sharing of love, affection, and contact between the child and wife, while wife had tended to alienate her daughter from husband; and

that husband could, more so than wife, allow the child to develop her own personality and needs separate from husband's needs. Additionally, the court found that the parties had a very acrimonious relationship and were unable to communicate or agree on issues involving the child.

Although the trial court did not specifically state that the award to husband of sole custody was in the child's best interests, it did recognize the need for resolving the issue of the child's best interests. And, it coupled this acknowledgment with findings addressing the relevant statutory factors involved in determining the best interests of a child. Implicit in the court's discussion and findings is a determination that award of sole custody to father would be in the child's best interests. And, because there is competent evidence to support the custody determination, including a custody evaluation and recommendation of the guardian ad litem (GAL) favorable to husband, we will not disturb it on review. *See In re Marriage of Rinow,* 624 P.2d 365 (Colo.App.1981).

### B.

Next, wife contends that, because the trial court order unreasonably limited her parenting time, it constituted an abuse of discretion. We agree.

█ The determination of parenting time is a matter within the sound discretion of the trial court, taking into consideration the child's best interests and the policy of encouraging a parent-child relationship. *In re Marriage of Velasquez,* 773 P.2d 635 (Colo. App.1989). Reasonable parenting time is mandated unless the court finds that it would endanger the child's physical health or significantly impair the child's emotional development. Section 14–10–129(1), C.R.S. (1995 Cum.Supp.).

█ Here, the trial court's order provides that, after May 1995, wife will have parenting time with the child only for one week at Christmas and four weeks each summer. Given wife's extensive time spent with the child prior to the entry of permanent orders, we conclude that such limited parenting time is unreasonable. *See In re Marriage of Ve-*

*lasquez, supra.* Indeed, even husband concedes that additional parenting time might be appropriate during the school year. We do not limit the court's authority to increase parenting time only in this manner; we do agree, however, that a remand to the trial court for reconsideration of this issue is necessary.

### C.

Wife's final contention regarding custody is that the trial court abused its discretion in ordering that the GAL continue, for an indefinite time into the future, his involvement in this case. As part of the order continuing the GAL's appointment, the trial court required the parties to confer with him before seeking any further relief from the court. Given the circumstances here, we agree that the court erred in entering such orders.

There may exist some question whether the statutes governing marriage dissolutions authorize the court to continue a GAL's appointment beyond the entry of a final decree (and during any appellate proceedings relating thereto). The several statutes governing GAL appointments contain varying provisions and the authority of a court with respect to continuing such appointments may vary accordingly. *See In Interest of A.R.W.,* 903 P.2d 10 (Colo.App.1994).

In *People in Interest of M.C.P.,* 768 P.2d 1253 (Colo.App.1988), it was held that, in dependency and neglect proceedings, *see* § 19–3–203, C.R.S. (1995 Cum.Supp.), a GAL's appointment normally continues, absent special circumstances, until a final decree of adoption is entered or the juvenile court's jurisdiction is terminated.

In *In Interest of A.R.W., supra,* a division of this court held that, absent special circumstances, there was no authority under the Uniform Parentage Act, *see* § 19–4–110, C.R.S. (1995 Cum.Supp.), to continue a GAL's appointment beyond the entry of a final paternity decree and orders respecting custody, support, and parenting time.

█ Under the dissolution statute, § 14–10–116, C.R.S. (1995 Cum.Supp.), the GAL is to represent the interests of the minor child

"with respect to custody, support, and parenting time." Hence, the purpose of a GAL in a dissolution proceeding in which, as here, custody is in dispute "is to determine and recommend those available alternatives which are in the best interests of the child." *In re Marriage of Barnthouse,* 765 P.2d 610, 612 (Colo.App.1988), *cert. denied,* 490 U.S. 1021, 109 S.Ct. 1747, 104 L.Ed.2d 184 (1989).

■ Here, the GAL has accomplished that purpose. During the course of the proceedings in the trial court, he made specific recommendations with respect to various issues involving the child's interests, and the court considered those recommendations in entering its orders. And, to the extent that the GAL's appointment was continued for purposes of this appeal and for any reconsideration of any such issues that this court may require, no party questions the validity of the order continuing his appointment.

However, it appears that the reason for the court's indefinite continuance of the GAL's appointment here was the parties' present perceived inability to communicate with one another. On its face, the court's order would seem to require the GAL to act as a mediator between them and to compel a fee-incurring consultation with the GAL before either party may apply to the court for further relief.

We will assume, arguendo, that a dissolution court, given extraordinary circumstances, may authorize a GAL to continue in office beyond the entry of final orders, so long as the purpose of that continuing appointment is to allow the GAL to perform his or her proper statutory functions. And, we have no doubt but that, if either party seeks to modify any permanent orders that relate to custody, support, or parenting time, the court may authorize the re-appointment of a GAL.

Here, however, the mere present inability of the parties to communicate is not a sufficient ground to continue the appointment of the GAL so that he may act as a mediator or facilitator for them. At least within the circumstances of this case, that is not a proper function of a GAL. We conclude, therefore, that the trial court abused its discretion in continuing the GAL's appointment indefinitely for this purpose.

## II. CHILD SUPPORT AND FINANCIAL ISSUES

### A.

Wife contends that, for purposes of computing child support, it was error to exclude from husband's monthly gross income his commissions and bonuses. Under the circumstances, we perceive no error.

■ We recognize that § 14–10–115(7)(a)(I)(A), C.R.S. (1995 Cum.Supp.) specifically includes bonuses and commissions in the definition of gross income used to calculate child support. However, here, the trial court made a factual finding, which is supported by husband's testimony, that there was no guarantee of future bonuses.

Because of a lack of certainty of future bonuses, the court directed the parties to exchange copies of their W–2 tax information on an annual basis. Thus, if husband receives a future bonus of significance, that information will be available to the wife as the basis for a modified child support order. Under these circumstances, we conclude that the trial court did not abuse its discretion in refusing to estimate the amount of any possible future bonuses for present support purposes.

### B.

Wife next contends that the $850 monthly cost of a nanny, as husband's work-related child care cost, was excessive, and absent specific findings supporting the need for a nanny, the inclusion of this cost in the calculation of child support was error. We disagree.

■ Wife's argument is based on § 14–10–115(11), C.R.S. (1987 Repl.Vol. 6B), which provides that work-related child care costs shall be added to the basic child support obligation and shall not exceed the level required to provide quality care from a licensed source. The guidelines establish a rebuttable presumption that, if these requirements are met, child care costs are to be added to the basic child support obligation. *In re*

*Marriage of Payan,* 890 P.2d 264 (Colo.App. 1995) (trial court erred in failing to include nanny costs without specific findings supporting the exclusion). The court may deviate from this guideline requirement if its application would be inequitable, unjust, or inappropriate, but if it does so, the court must make specific factual findings to support the deviation. Section 14–10–115(3)(a), C.R.S. (1995 Cum.Supp.); *In re Marriage of English,* 757 P.2d 1130 (Colo.App.1988).

Here, however, the parties filed a pre-trial stipulation that, if husband was awarded custody, he "anticipated" that his child care costs would be $850 per month. Wife argues that this stipulation did not constitute an agreement upon the reasonableness of husband's "anticipation," but that the stipulation specifically states that child support is a disputed issue.

However, the provisions with respect to child care costs were included in that part of the stipulation that recited generally undisputed factual information. Where the parties disagreed upon the facts reviewed, the stipulation noted that disagreement. No such disagreement was noted with respect to husband's anticipated child care costs.

Further, considering both the stipulation as to cost and husband's testimony that the nanny was necessary for work-related child care, we conclude that the presumption was raised that this cost was includable in the basic support obligation. Wife has failed to point to any evidence, and we find none, which supports her argument that the cost of the nanny was excessive. Thus, the presumption not having been rebutted, her contention must fail. *See In re Marriage of Payan, supra.*

### C.

Wife's next contention is that the trial court erred in directing her to pay a percentage of all of the child's uninsured medical expenses, in addition to a percentage of the cost of the child's therapy. Because the court's present findings are insufficient to support these orders, the cause must be remanded to that court for its reconsideration and adoption of more specific findings of fact.

Section 14–10–115(12)(a), C.R.S. (1987 Repl.Vol. 6B) provides that extraordinary medical expenses incurred on behalf of a child must be added to the basic child support obligation and shared by the parents in proportion to their adjusted gross incomes. Extraordinary medical expenses under § 14–10–115(12)(b), C.R.S. (1987 Repl. Vol. 6B) are uninsured expenses in excess of one hundred dollars for a single illness or condition incurred for any uninsured *chronic* health problem and other treatments. *In re Marriage of Ahrens,* 847 P.2d 257 (Colo.App. 1993).

In addition, the court may, in its discretion, include the cost of professional counseling or psychiatric therapy as an extraordinary medical expense, but only if a mental disorder is diagnosed. Section 14–10–115(12)(b), C.R.S. (1987 Repl.Vol. 6B); *In re Marriage of Stone,* 749 P.2d 467 (Colo.App. 1987).

The inclusion of extraordinary medical expenses in the child support calculation contemplates ongoing, recurring expenses for *chronic medical problems,* thereby rendering it appropriate to increase, on a relatively permanent basis, the overall child support obligation. *See In re Marriage of Nielsen,* 794 P.2d 1097 (Colo.App.1990).

Here, the trial court's order appears to require wife to pay a pro rata portion of all of the child's uninsured medical expenses. And, this payment is to be made in addition to the child support payment to be made by wife, the amount of which was established by the court pursuant to the guidelines. Yet, the statute contemplates that, unless uninsured medical expenses exceed one hundred dollars, the custodial parent is to bear those costs. If it can reasonably be determined that such costs shall exceed that amount, they should be considered in determining child support under the guidelines.

In addition, the court did not find that the child has been diagnosed as having a mental disorder. And, absent such a finding, a non-custodial parent cannot be required to share in the costs for therapy, whether such costs are included within the child support obligation or ordered to be paid separately.

Absent the need for therapy because of a mental disorder, such cost must be borne by the party who makes the decision to provide the child with therapy. *See In re Marriage of Stone, supra.*

Further, the record here does not establish, as a matter of law, that the child needs therapy because of a mental disorder. On the contrary, there is substantial evidence that the child is normal and well-adjusted. Given this record, therefore, we cannot approve the trial court's direction to wife to pay a portion of the child's therapy costs, unless the court makes a record-supported finding that the child has been diagnosed as having a mental disorder.

Given this lack of findings, therefore, the trial court on remand should determine whether it may reasonably be concluded that the child's uninsured medical costs will be extraordinary within the meaning of the statute. If so, the child support payment should be revised accordingly. If not, wife should not be ordered to make any contribution toward payment of those costs.

Likewise, the court should determine whether the child has been diagnosed with a mental disorder and to enter its order respecting payment of therapy costs for the child, consistent with that finding, in accordance with the views expressed in this opinion.

### III. PROPERTY ISSUES

#### A.

Next, wife contends that the trial court erred in valuing her separate property as of the date of the parties' separation, rather than as of the date of the decree. Again, we conclude that the trial court's findings are insufficient to allow us to resolve this issue.

█ Generally, property must be valued as of the date of the decree or as of the date of the hearing on the disposition of property, whichever is earlier. Section 14–10–113(5), C.R.S. (1987 Repl.Vol. 6B); *see In re Marriage of Young,* 682 P.2d 1233 (Colo.App. 1984) (wife was entitled to share in the increase in the value of property between the date of separation and the date of the decree). This provision is mandatory. *In re Marriage of Thompson,* 706 P.2d 428 (Colo. App.1985); *see In re Marriage of Wells,* 850 P.2d 694 (Colo.1993) (following remand to redistribute property, trial court may consider changed circumstances of wife and husband between date of decree and post-decree hearing, but value of property cannot be changed).

█ However, if marital assets are dissipated by one of the parties, they must be valued as of the time when they existed. *See In re Marriage of Posinoff,* 683 P.2d 377 (Colo.App.1984) (funds dissipated by husband prior to commencement of dissolution proceedings were subject to division); *In re Marriage of Anderson,* 811 P.2d 419 (Colo. App.1990) (dissipation of marital assets was a proper consideration for division of property).

Here, the trial court evaluated certain assets as of the date of the parties' separation, apparently based upon its determination that the wife had been "steadily ... liquidating" those assets. Wife argues, however, that the evidence shows that such "liquidation" was simply to sustain herself and did not constitute a "dissipation" of assets authorizing the court to consider those assets for property division purposes.

Because it is not clear in what sense the court used the term "liquidating," the court on remand should make a specific finding whether the wife used the pertinent assets for a proper or for an illegitimate purpose. And, only if the court finds that the expenditure of assets was improper should it consider the value of those in its property division orders. Otherwise, it should modify that order accordingly.

#### B.

Wife's next contention is that the trial court improperly subtracted selling costs and capital gains from the equity in the Vail condominium, part of which was marital property and part of which was husband's separate property, thereby depleting the equity and awarding wife nothing. We agree that this was error.

■ In valuing property, the trial court may, in its discretion, consider tax consequences, *In re Marriage of Grubb,* 721 P.2d 1194 (Colo.App.1986), *rev'd on other grounds,* 745 P.2d 661 (Colo.1987), or the effect of seller's costs. *In re Marriage of Thompson, supra.*

However, central to this decision is a determination whether the property will actually be sold, thereby resulting in a net equity. *See Rhoades v. Rhoades,* 188 Colo. 423, 535 P.2d 1122 (1975) (gross equity properly used to value property where seller's costs were speculative partially because husband might not decide to sell); *In re Marriage of Thompson, supra* (use of gross equity for valuation was proper where wife intended to occupy home); *In re Marriage of Bayer,* 687 P.2d 537 (Colo.App.1984) (since evidence was that husband intended to keep the property, valuation based on gross equity was proper); *In re Marriage of Woodrum,* 618 P.2d 732 (Colo.App.1980) (seller's costs properly deducted, especially since court provided means to compensate husband in event actual costs differed from estimated costs).

■ Here, there is no evidence as to whether husband intended to keep or to sell the Vail condominium. Further, the court's finding that the net equity was almost zero is unsupported by the evidence. Wife's expert testified that, even after deducting a 10% cost of sale and capital gains tax, the net equity was $6600. Husband testified that he did not disagree with this figure. Thus, on remand, the court should consider husband's intentions as to whether he will sell this property, and if the property is to be sold, the finding of net equity must comport with the evidence.

### C.

Wife's last contention as to the property division is that the trial court erred in finding that the Vail condominium and another property, both of which husband owned prior to the marriage but which were subsequently jointly titled, were not gifts to the marital estate. We agree that the court erred in finding that these assets were husband's separate property.

■ If one spouse causes title to be placed in the joint names of both, a gift is presumed, and the burden to show otherwise is upon the donor. *In re Marriage of Moncrief,* 36 Colo.App. 140, 535 P.2d 1137 (1975).

■ Here, husband testified, and the trial court found, that husband's reason for placing the two properties in joint tenancy was to provide assets to wife that could be easily liquidated in the event of his death. We agree with wife that this reason supports, rather than rebuts, the finding of a gift to the marital estate. *See In re Marriage of Meisner,* 715 P.2d 1273 (Colo.App.1985) (since husband's intent in purchasing property was to make joint investment with wife and he intended that shares would pass to her upon his death, they were properly classified as marital property); *In re Marriage of Moncrief, supra* (explanation that the title was placed in joint tenancy so as to avoid inheritance taxes did not overcome the presumption that a gift occurred; it merely expressed reason for gift).

Thus, on remand, the trial court must consider these assets as marital property and treat them as such in determining an equitable distribution of marital assets.

### IV. ABUSE OF DISCRETION AND BIAS AGAINST WIFE

Wife argues that the trial court's order, when taken as a whole, evidences an abuse of discretion and bias against the wife sufficient to warrant a new trial on all issues. While we agree that the trial court abused its discretion in certain respects and also included inappropriate findings in its final order, we conclude that these actions are insufficient to demonstrate a bias requiring a new trial.

### A.

First, wife contends that the trial court abused its discretion in requiring wife to decide by a specific date whether she was leaving Colorado. We disagree.

■ The trial court can enter orders in the best interest of the child. *See In re Marriage of Zebedee,* 778 P.2d 694 (Colo.App. 1988).

Here, wife testified that she did not know what she would do if the court prohibited the child's removal from Colorado. However, she also testified that she had to notify her prospective out-of-state employer of her decision to take the job when the court made its decision. Thus, to the extent that the trial court, relying on the wife's testimony that an early decision was necessary, required that the child's schedule for parenting time be fixed at an imminent date, there was no abuse of discretion.

### B.

Next, wife contends that the trial court abused its discretion in ordering both parents to refrain from drinking alcoholic beverages or smoking in the presence of the child. We agree that this order is unsupported by the evidence and must be reversed.

Husband concedes that smoking and drinking were not issues in this case, as neither party smokes nor abuses alcohol. Therefore, on remand, the trial court must delete this provision from its permanent orders.

### C.

Wife's next contention is that the trial court abused its discretion by ordering the parties into counseling for parenting purposes. We disagree.

Relying on *In re Marriage of Zebedee,* *supra,* the trial court specifically found that the counseling requirement was in the child's best interest. Inasmuch as this requirement is supported by the court's findings and the evidence, we will not disturb it on review. *See Gebhardt v. Gebhardt,* 198 Colo. 28, 595 P.2d 1048 (1979).

### D.

Lastly, wife contends that the trial court made inappropriate findings demonstrating bias against her. We agree that some of the findings were inappropriate.

The trial court found that wife was a "thin, attractive woman," but it made no findings with respect to husband's physical attributes.

While we recognize the inappropriateness of such a comment, we fail to perceive any prejudicial effect of that comment upon any of the issues raised.

Further, a remark by the court concerning the frequency with which the parties engaged in sexual relations during the marriage was irrelevant and inappropriate to the court's findings. However, because it concerns both parties equally, it is not evidence of any bias directed solely at wife. On remand, however, the court should strike this statement from the permanent orders.

We have considered wife's additional contentions of alleged bias; they are without merit.

### V. ATTORNEY FEES

Wife's final contention is that the trial court abused its discretion in awarding her only $10,000 of the $97,254 in attorney fees she incurred.

However, we need not address this issue at this time. Because we are remanding the cause to the trial court to reconsider its division of property, the court should also reconsider its award of attorney fees in conjunction with its reconsideration of its property division orders.

The provisions of the judgment respecting wife's parenting time, the division of property, and the payment of costs for the child's therapy are reversed, and the cause is remanded to the trial court for its further consideration of these subjects and of its award of attorney fees and for the amendment of the present permanent orders in the manner indicated in this opinion. Further, that portion of the judgment continuing the appointment of the GAL for an indefinite term is also reversed. The judgment is affirmed in all other respects.

METZGER and ROTHENBERG, JJ., concur.