**S.F.E., In Interest of T.I.E., a child, Petitioner–Appellee and Cross–Appellant,**

**And Concerning G.L.P., Respondent–Appellant and Cross–Appellee.**

**No. 97CA1837.**

Colorado Court of Appeals, Div. III.

Nov. 13, 1998.

As Modified on Denial of Rehearing Dec. 10, 1998.

Certiorari Denied Aug. 16, 1999.*

---

* Justice SCOTT does not participate.

Charles H. Willman, P.C., Charles H. Willman, Glenwood Springs, Colorado, for Petitioner–Appellee and Cross–Appellant.

Clanahan, Tanner, Downing & Knowlton, Langdon J. Jorgensen, Denver, Colorado, for Respondent–Appellant and Cross–Appellee.

Opinion by Judge JONES.

In this paternity action, G.L.P. (father) appeals and S.F.E. (mother) cross-appeals from the judgment granting mother sole custody of the minor child, T.I.E., and providing for parenting time, child support, and related matters. We affirm in part, reverse in part, and remand with directions.

### The Father's Appeal

#### I.

The father contends that the trial court erred in failing properly to apply the best interests standard to the determination of custody. We disagree.

#### A.

The father relies upon a portion of the trial court's order, as subsequently corrected under C.R.C.P. 60(a), to argue that the court placed undue significance upon the parties' marital status and treated him differently than it would have treated him if he had been married to the mother. That portion states:

> It is significant to note that this is not a custody dispute arising following a marriage. This is a paternity action. The parties never had a relationship which was

in the nature of a marriage. While they discussed marriage, they never agreed to be married or lived together. They did, however, have a child. This Court is called upon to enter orders that are in the best interest of that child.

This court concludes that the better and more convincing evidence is that [the mother] should be awarded sole custody. [The child] is more closely bonded to her. The parties agree that she should reside with [the mother]. The psychological profiles of the parties, their prior conduct and the positions taken by them in this litigation make it clear that the parties cannot come to a consensus concerning matters of importance to [the child]. Unlike parties in a dissolution of marriage action who once at least came to an agreement that they should be married and live together as husband and wife, these parties never came to an agreement on that fundamental matter of importance.

Under the Children's Code, §§19–1–101 to 19–6–106, C.R.S.1998, an award of custody must serve the public as well as the best interests of the child. *L.A.G. v. People in Interest of A.A.G.*, 912 P.2d 1385 (Colo.1996).

Paternity actions are governed by the Uniform Parentage Act (UPA), §19–4–101, et seq., C.R.S.1998. Section 19–4–116(3)(a), C.R.S.1998, provides that the judgment determining the existence or non-existence of the parent and child relationship may contain a provision concerning custody and parenting time privileges, or any other matter, in the best interest of the child.

Here, we disagree with the father's characterization of the court's order. The trial court properly recognized that this case arose out of a paternity, and not a dissolution of marriage, action. As such, the proceedings were governed by the provisions and underlying purposes of the Children's Code, which are broader than those applicable to a dissolution of marriage proceeding. See *L.A.G. v. People in Interest of A.A.G., supra.*

■ The order is not improper merely because the court recognized that the parties had neither married nor cohabited. Further, we do not read the order as creating a presumption in favor of mother or a presumption against the award of joint custody. Rather, the trial court could properly consider the parties' conduct, both prior to and during this litigation, as relevant to the broader issue of whether the parties are able to cooperate and to make decisions jointly.

In addition to the above-referenced portion of the order, the court made additional findings that mother was rigid and inflexible and that father harbored a significant amount of anger and hostility. It also found that visitation occurred in an atmosphere of tension and distrust. All of these factors are appropriate to be considered under §19–4–116(3)(a), C.R.S.1998, and are related to the proper determination of the best interests of the child under the UPA and under §§14–10–124 and 14–10–124(1.5), C.R.S.1998. These factors are also critical to the issue whether the parties are able to cooperate as joint custodians throughout the child's minority.

Further, the trial court found that the child was still being breast fed and that she was more closely bonded to her mother. It rejected the opinion of the custody evaluator that joint custody was appropriate because that recommendation was based solely on the expectation that it would force the parties to communicate. Accordingly, we conclude that the findings do not establish that the trial court impermissibly treated the father differently from the mother.

In addition, this case is unlike the situation in *In re Marriage of Moore*, 35 Colo.App. 280, 531 P.2d 995 (1975), where the trial court improperly considered the wife's living with a man to whom she was not married in disqualifying her as custodian of the children. There was no such disqualification in this case.

### B.

The father also argues that the orders concerning parenting time constituted an abuse of discretion.

### 1.

■ First, the father specifically maintains that the parenting time order was too general and that the evidence did not support a

limitation of his parenting time. We disagree.

Under the UPA, the court may enter temporary and permanent orders regarding parenting time rights, and has continuing jurisdiction to modify such orders. *See* §§19–4–111(4), 19–4–116(3), and 19–4–119(1)(b), C.R.S.1998. Further, in such proceedings the court must make and modify permanent orders respecting parenting time in accordance with the Uniform Dissolution of Marriage Act (UDMA), §14–10–101, et seq., C.R.S.1998 (UDMA). *People in Interest of S.E.G.*, 934 P.2d 920 (Colo.App.1997).

Under the UDMA, the determination of parenting time is a matter within the sound discretion of the trial court, taking into consideration the child's best interests and the policy of encouraging the parent-child relationship. Parenting time is primarily a right of the child and only secondarily a right of the parent. *In re Marriage of Elmer*, 936 P.2d 617 (Colo.App.1997).

If the evidence shows a lack of cooperation between the parties, a general order does not meet the purposes for which parenting time is intended. *In re Marriage of Sepmeier*, 782 P.2d 876 (Colo.App.1989); *In re Marriage of Plummer*, 709 P.2d 1388 (Colo.App.1985).

Here, the trial court found that the evidence did not show that the father represented a threat to the child or that he would be sexually inappropriate with her. It, therefore, concluded that the father should have parenting time that is sufficiently frequent and unrestricted to allow an appropriate father-daughter bond to develop. The court awarded the father "parenting time of three two-hour periods during the work week, two in the early evening and one during the weekend on the first and third weekends of the month."

Given the child's age, we do not view this order as an undue restriction on the father's parenting time. And, at appropriate times during the child's development, the court, in response to motions to modify parenting time, may enter further orders respecting issues raised by her continued development and by other circumstances.

2.

Secondly, the father argues that the circumstances required the appointment of a special advocate, parenting time coordinator, or guardian ad litem for continued intervention. We disagree.

In paternity actions, a guardian ad litem (GAL) is appointed for the sole purpose of representing the child's best interests. Therefore, absent special circumstances, there is no authority under the UPA to continue the appointment of a GAL beyond the entry of a final paternity decree and orders respecting custody, support, and parenting time. *In Interest of A.R.W.*, 903 P.2d 10 (Colo.App.1994).

There may be limited instances when issues are raised after the entry of permanent orders, and the court, on its own motion or by motion of a party, may conclude that the appointment of a GAL is necessary for a limited purpose and duration to represent the interests of the child. However, the appointment of a GAL after the entry of permanent orders should not be made as a matter of course. *In Interest of A.R.W.*, *supra*; *see In re Marriage of Finer*, 920 P.2d 325 (Colo.App.1996)(even assuming that a dissolution court, given extraordinary circumstances, may authorize a guardian to continue in office beyond the entry of final orders, the mere present inability of the parties to communicate is not a sufficient ground to continue the appointment of the guardian ad litem as a mediator or facilitator); *cf. In re Marriage of Elmer*, *supra* (trial court has no authority to delegate to the child's psychiatrist the decision when overnight visitation could begin to occur).

Here, the court conducted a permanent orders hearing over the course of several days and was well aware of the animosity and conflict between the parties. Nevertheless, the court found that the custody and parenting time orders were sufficiently simple that there should be little need for mediation. It concluded that a GAL or mediator was not required, but ordered the parties to comply with the recommendations concern-

ing individual psychotherapy. Based upon the foregoing authorities and these circumstances, we find no error.

## II.

Next, the father contends that the trial court erred in the allocation of, or failure to allocate, certain expenses. We remand with directions.

The final order requires that the father pay his proportionate share of the unreimbursed "pre-natal and post-natal medical expenses" which totaled $7166. The support order, which is an attachment to the decree, further provides that: "[The father] is to reimburse [the mother] for 63.3% of all medical, dental and related costs not covered by medical insurance, including the insurance deductible amounts."

### A.

The father argues that the child support calculated under the guidelines, which he has paid since the child's birth, necessarily includes a routine level of medical expenses for the child. Further findings on this issue are needed.

#### 1.

Under §19–4–116, C.R.S.1998, the trial court may order the father to pay the reasonable expenses of the mother's "pregnancy and confinement."

█ The mother testified here that she incurred $7166 in out-of pocket costs for medical, prenatal, and birth expenses after insurance payments. And, as appropriate under §19–4–116, the trial court apportioned these expenses between the parties according to their respective gross incomes. Hence, we find no error in this portion of the order.

#### 2.

█ The father also argues that, under the child support guidelines, only uninsured extraordinary medical expenses in excess of $100 for a single illness or condition may be apportioned between the parties. In contrast, the mother argues that all general medical expenses which arise on behalf of the child should be divided between the parties. Our analysis of the relevant statutes leads us to agree with the father.

Section 19–4–116(5), C.R.S.1998, imbues the court in a paternity action with the authority to require a party to purchase or maintain a medical insurance policy to provide for the current and future medical needs of the child. That section also states that the court may make a determination of the parties' responsibilities to pay required medical insurance deductibles and copayments.

However, §19–4–116(6), C.R.S.1998, provides that in determining the amount to be paid by a parent for support of the child, the court shall consider all relevant facts, including the child support guidelines set forth in §14–10–115, C.R.S.1998. *See In Interest of D.R.V.,* 885 P.2d 351 (Colo.App.1994);§19–4–116(6)(k), C.R.S.1998 (child support guidelines are a factor in determining the amount to be paid by a parent for the support of a child).

Further, §19–4–129, C.R.S.1998, provides that the provisions of §14–10–115 shall apply to all child support obligations, established or modified, as part of any paternity proceeding that is filed on or subsequent to July 1, 1988.

Under the child support guidelines, extraordinary medical expenses under §14–10–115(13.5)(h)(II), C.R.S.1998, are defined as uninsured expenses in excess of $100 for a single illness or condition incurred for, *inter alia,* reasonably necessary orthodontia, dental treatment, and any uninsured chronic health problem. *See In re Marriage of Marson,* 929 P.2d 51 (Colo.App.1996).

█ Under the plain language of the statute, if medical expenses are covered by insurance, they cannot as a matter of law be considered extraordinary medical expenses. *In re Marriage of Ahrens,* 847 P.2d 257 (Colo.App.1993). The child support guidelines contemplate that, unless uninsured medical expenses exceed one hundred dollars, the custodial parent is to bear those costs. *In re Marriage of Finer, supra.*

█ In construing statutes addressing the same subject, we must give them a con-

648

sistent, harmonious effect. *See People in Interest of S.E.G., supra.* If the statutes cannot be reconciled, the sections that were enacted later prevail. *M.S. v. People,* 812 P.2d 632 (Colo.1991); *In Interest of D.R.V., supra.*

The pertinent provision of §19–4–116(5), which provided that the court "may make a determination of whose responsibility it shall be to pay required medical insurance deductibles and copayments" has been in effect since 1985. *See* Colo. Sess. Laws 1985, ch. 132, §19–6–116 at 597. Section 19–4–129, which requires application of the child support guidelines to all support obligations established or modified under the UPA, was added in 1988. *See* Colo. Sess. Laws 1988, ch. 135, at 746.

To harmonize the potential conflict between §§19–4–116 and 19–4–129, we conclude that, in a paternity proceeding filed on or subsequent to July 1, 1988, only uninsured medical expenses exceeding one hundred dollars for enumerated health problems may be apportioned between the parties in proportion to their respective incomes. *See In re Marriage of Finer, supra* ; *In re Marriage of Ahrens, supra.*

Here, the support order improperly allocated between the parties all uninsured medical expenses that may be incurred on behalf of the child. Accordingly, it is necessary to remand this matter for reconsideration and entry of an order that limits the allocation of future medical costs incurred for the child to the extraordinary expenses, as defined under the child support guidelines.

B.

Next, the father argues that the trial court erred in failing to apportion the dependency exemption between the parties based upon their respective gross incomes. We agree.

Initially, we reject the mother's argument that the trial court is preempted from allocating the tax exemption between the parties.

Before a state law governing domestic relations will be overridden, it must do "major damage" to "clear and substantial" federal interests. *In re Marriage of Rahn,* 914 P.2d 463 (Colo.App.1995).

Federal law contemplates allocation of the dependency exemption by state courts. *See In re Marriage of Beyer,* 789 P.2d 468 (Colo.App.1989); *see also In re Marriage of Ford,* 851 P.2d 295 (Colo.App. 1993). The trial court has the authority to order the custodial parent to execute the necessary forms declaring that such parent will not claim the children as dependents. *In re Marriage of Beyer, supra.* Accordingly, we address the merits of the father's request under Colorado law.

As previously stated, §19–4–129 requires application of the child support guidelines to paternity proceedings. Section 14–10–115(14.5), C.R.S.1998, of those guidelines, requires the court, unless otherwise agreed by the parties, to allocate the right to claim dependent children for income tax purposes between the parties in proportion to their contributions to the costs of raising the children. *See In re Marriage of Oberg,* 900 P.2d 1267 (Colo.App.1994); *see also In Interest of A.R.W., supra* (assuming, without deciding, that §14–10–115(14.5) applies to paternity action). Therefore, the plain language of the §§14–10–115(14.5) and 19–4–129 requires the trial court to allocate the dependency exemption between the parties.

Further, the phrase "contributions to the costs of raising the children" in §14–10–115(14.5) means the percentage of child support attributed to each parent under §14–10–115(14), C.R.S.1998. *In re Marriage of Staggs,* 940 P.2d 1109 (Colo.App.1997); *see, e.g., In Interest of A.R.W., supra* (allocation of exemption in alternate years to parent earning 61.9% of the total income approved).

Here, after calculating child support using worksheet A, the trial court found that the "allocation of the tax exemption made by the Internal Revenue Code is appropriate to the facts of this case and no further allocation should be made."

However, the court did not consider application of §14–10–115(14.5). Accordingly, we remand for reconsideration of the father's request in the light of the relevant statutes,

and for allocation of the dependency exemption between the parties.

### C.

 The father also argues that the trial court erred by using the cost of a nanny as the appropriate work-related child care expense in the calculation of child support. We disagree.

The father argues that the court should not have determined that the parties had an agreement concerning the use of a nanny. He reasons that he considered the use of a nanny justifiable if her were awarded custody because of his lack of parental experience. He argues that the mother, in contrast, had already been a parent. Therefore, relying on §14–10–115(11)(b), C.R.S.1998, which states that child care costs shall not exceed the level required to provide quality care from a licensed source, the father argues in essence that the cost of a nanny was excessive.

As stated previously, §19–4–129 provides that the child support guidelines shall apply to all child support obligations established or modified under the UPA.

The language of §14–10–115(11)(b) does not preclude the trial court from including the costs of a nanny in the calculation of child support under the guidelines. *In re Marriage of Payan,* 890 P.2d 264 (Colo.App. 1995). The parties' agreement may establish a basis for determining that such cost is reasonable and necessary in a particular case. *See In re Marriage of Finer, supra.*

Here, the court determined that "both parties indicated that use of the nanny was an appropriate way to provide child care." The trial court, therefore, could conclude that the actual cost of a nanny constituted quality care from a licensed source in this case.

### III.

Finally, the father asserts that the trial court erred in failing to address his request that the child's surname be changed. We remand for specific findings.

Section 19–4–116(3) has been interpreted as a grant of broad authority that includes ordering a name change if it is in the child's best interests. *D.K.W. v. J.L.B.,* 807 P.2d 1222 (Colo.App.1990).

 In considering a request for a name change, the court should consider the length of time the child has used the surname, the potential impact of the requested name change on the child's relationship with each parent, the child's preference, and any misconduct by a parent which would justify a name change. *D.K.W. v. J.L.B., supra* (following *Hamman v. County Court,* 753 P.2d 743 (Colo.1988) and *In re Marriage of Nguyen,* 684 P.2d 258 (Colo.App.1983), *cert. denied,* 469 U.S. 1108, 105 S.Ct. 785, 83 L.Ed.2d 779 (1985), both of which were decided under other statutory provisions and common law).

In addition, the court in a paternity action must also consider the motivation of the parties, the identification of the child as part of a family unit, the embarrassment, discomfort, or inconvenience that may result if the child's surname differs from that of the custodial parent, and the possibility that a different name may cause insecurity or lack of identity. Whether a requested name change is in the best interests of a minor child is a factual determination for the trial court. *D.K.W. v. J.L.B., supra.*

 Here, the mother conceded that the birth certificate should be changed to show the father as the child's natural father, and the court entered a post-decree order requiring that modification. Regarding the request for a name change, the trial court found that the father wished the child's name to reflect that he is her father. It also found that the mother opposed the request and believed that a change of name would create confusion as the child grew up. The court further found that none of the professionals who testified concerning the best interests of the child had addressed the issue. Under these circumstances, we direct that, on remand, the trial court enter explicit findings and conclusions regarding the father's request.

We reject the father's other contentions.

*The Mother's Appeal*

### IV.

The mother first contends that the trial court erred in not allowing her to testify concerning the history of the father's dominance and sexual abuse during their relationship.

However, inasmuch as this argument is predicated upon this court's acceptance of one of the father's arguments and the grant of a new trial, we need not address this issue.

### V.

■ The mother also contends that the trial court erred in failing to award her attorney fees. We disagree.

Section 19–4–117, C.R.S.1998, provides that the court shall order reasonable fees of counsel as well as other fees and costs to be paid by the parties in proportions and at times determined by the court.

Here, the trial court found that both parties are professionals earning significant incomes and holding substantial assets. It found that the father's monthly income in 1996 was approximately $8208. Worksheet A shows that the mother's monthly income was $5473. The father was ordered to pay child support in the amount of $1437 per month, after correction of the computation to include the use of a nanny. In addition, the mother's closing argument states that the parties incurred approximately equal amounts of attorney fees and costs. Under these circumstances, we cannot say as a matter of law that the trial court's order constitutes an abuse of discretion. *See In Interest of D.R.V., supra.*

The judgment is reversed insofar as it orders the father to pay all uninsured medical, dental, and related costs, including deductibles, and denies his request for the dependency deduction, and the cause is remanded for additional findings on these issues and the name change issue consistent with the views expressed herein. In all other respects, the judgment is affirmed.

Judge DAVIDSON and Judge RULAND concur.