23CA0820 Marriage of Beck 08-15-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA0820 Jefferson County District Court No. 22DR30455 Honorable Russell Klein, Judge In re the Marriage of Thomas Albert Beck, Appellant, and Tina Marie Beck, Appellee. JUDGMENT AFFIRMED Division III Opinion by JUDGE YUN Dunn and Moultrie, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced August 15, 2023 Peak Legal Services, LLC, Todd Narum, Denver, Colorado, for Appellant The Wollard Law Firm, PC, Eric D. Wollard, Wheat Ridge, Colorado, for Appellee 
1 ¶ 1 In this dissolution of marriage case between Thomas Albert Beck (husband) and Tina Marie Beck (wife), husband appeals the district court’s allocation of the marital estate. We affirm. I. Background ¶ 2 The parties married in 1997. During the marriage, wife sustained serious injuries in a car accident and received over $600,000 from personal injury settlements related to that accident. ¶ 3 The parties later separated, and in 2019, husband moved to Oklahoma to help his son start Whitewater Hash (a marijuana wholesale business). Shortly after the business closed, husband initiated the dissolution case. ¶ 4 After a hearing, the district court dissolved the marriage. In allocating the marital estate, the court found that the parties’ home was worth $775,000, they had used $410,000 from wife’s personal injury settlement to purchase it, and they had used at least some of the settlement proceeds to complete $240,000 in renovations to the home. The court awarded the home to wife and, in dividing its marital equity, the court ordered that wife first receive $410,000 and that the parties then equally divide the remaining $365,000. 
2 ¶ 5 The court also found that husband dissipated $262,000 when he used marital funds for Whitewater Hash and concealed what happened to those funds. The court factored these funds into its allocation of the marital estate and ordered that wife’s share of these funds ($131,000) be offset against husband’s share of the marital home. ¶ 6 As for the remaining marital assets, the court allocated to husband about $30,000 more of the marital equity from their vehicles, accepted the parties’ allocation of bank accounts, and divided their personal property. And the court ordered wife to pay husband approximately $16,000.
1 II. Property Division ¶ 7 Husband contends that the district court’s property division must be reversed because the court (1) improperly awarded wife a disproportionate share of the marital estate by giving her substantially more of the marital home’s equity and (2) incorrectly 1 To the extent husband suggests that the district court erred by calculating this payment “[t]o equalize the parties,” he does not develop any legal or factual argument in support of that suggestion. We therefore do not address it. See In re Parental Responsibilities Concerning S.Z.S., 2022 COA 105, ¶ 29. 
3 found that he dissipated $262,000 in connection with Whitewater Hash. We reject his contentions. A. Standard of Review ¶ 8 The court has great latitude to equitably divide the marital estate in such proportions as it deems just. See § 14-10-113(1), C.R.S. 2023; LaFleur v. Pyfer, 2021 CO 3, ¶ 61. We will not disturb the court’s decision absent a showing that it abused its discretion, meaning that it acted in a manifestly arbitrary, unreasonable, or unfair manner, or it misapplied the law. In re Marriage of Medeiros, 2023 COA 42M, ¶ 28; see also Hall v. Moreno, 2012 CO 14, ¶ 54 (explaining that, when reviewing the court’s decision, we consider whether the decision fell within the range of reasonable options). B. The Marital Home’s Equity ¶ 9 We are not persuaded that the district court abused its discretion by awarding wife a disproportionate share of the marital home’s equity. ¶ 10 A court’s division of the marital estate must be equitable based on the facts and circumstances of the case; it does not need to be equal. In re Marriage of Wright, 2020 COA 11, ¶ 3. To achieve an equitable division, the court considers all relevant factors, which 
4 may include the spouses’ contributions to the acquisition of marital property, the value of property set aside to each spouse, the spouses’ economic circumstances, and any change to the value of the spouses’ separate property. § 14-10-113(1)(a)-(d). ¶ 11 The funds from a personal injury settlement arising during the marriage, as well as the assets acquired from that settlement, are marital property. In re Marriage of Simon, 856 P.2d 47, 50 (Colo. App. 1993). In dividing those marital assets, the court should consider the effect the personal injury had on the marital estate, which may include lost income, medical expenses, inability to meet marital obligations, and any other relevant circumstances. Id.; see also In re Marriage of Fields, 779 P.2d 1371, 1374 (Colo. App. 1989). ¶ 12 The court found that most of the marital estate’s equity was comprised of the marital home, which it found was worth $775,000. In dividing the home’s equity, the court found that wife had suffered significant injuries from her car accident, which restricted her physical activity and prevented her from returning to her previous lifestyle. It also found that her injuries precluded her from working a full-time job and that she could not earn a regular income. The court further found that wife had endured numerous medical 
5 procedures and will continue to incur medical expenses after the dissolution. And it found that the parties used a significant portion of wife’s personal injury settlement to purchase the marital home and that these funds were designed to help address wife’s future needs. After considering these and other relevant circumstances, the court determined that wife was entitled to a greater share of the home’s equity and allocated to her $592,500 and to husband the remaining $182,500. ¶ 13 The record supports the court’s findings on wife’s economic circumstances, ongoing medical needs, and contribution to the acquisition of the marital home. Wife testified that she sustained severe back injuries from the accident and that due to those injuries, she could not work more than twenty hours per week and would require accommodation from any future employer. She said that her estimated economic losses over her lifetime from the accident may exceed $1 million and that presently she only received an annuity payment of $1,037 per month. Wife also testified that she was constantly in pain, had undergone approximately twenty surgeries and medical procedures, and required ongoing medical care to treat her injuries. And she said that the parties purchased 
6 the marital home by using $410,000 of the proceeds from the personal injury settlement and that they also relied on those funds to pay for the home’s renovations. Given these circumstances, the court acted within its discretion by allocating the home’s equity disproportionately in wife’s favor. See § 14-10-113(1)(a), (c); Wright, ¶ 10 (affirming an unequal allocation supported by the record). ¶ 14 Husband argues that the court failed to consider his present economic circumstances. Not so. In its ruling, the court found that husband was unemployed and received $2,200 per month from his social security benefits. It also noted that he had about forty years of experience operating construction businesses and working in the construction industry and that, before the dissolution proceeding, he helped his son operate Whitewater Hash. Although husband highlights other evidence that he believes established a financial situation worse than wife’s, we presume that the court considered all the evidence when it reached its decision. See In re Marriage of Udis, 780 P.2d 499, 504 (Colo. 1989). And we may not set aside its resolution of the conflicting evidence when, as here, the record supports its decision. See In re Marriage of Evans, 2021 COA 141, ¶ 45; see also In re Marriage of Powell, 220 P.3d 952, 959 (Colo. 
7 App. 2009) (“[T]he court need not make specific findings as to each statutory factor as long as the findings made are sufficient to allow the reviewing court to determine that the decision is supported by competent evidence.”). ¶ 15 Husband also argues that the court did not adequately consider the effect wife’s injury had on the marital estate when it allocated this asset. See Simon, 856 P.2d at 50. But as noted above, the court considered the factors it found relevant, including wife’s lost income, the restrictions on her earning potential, and her medical procedures and expenses. See id. While husband believes that other factors, such as his financial support of the family following the accident, could have led to a more equal allocation, it was within the court’s sole discretion to weigh the relevant factors when determining an equitable allocation of the marital estate, and we must defer to its determination supported by the record. See Powell, 220 P.3d at 959; see also Evans, ¶ 45. ¶ 16 We thus are not persuaded that the court abused its discretion by allocating to wife a disproportionate share of the marital home’s equity. See In re Marriage of Hunt, 909 P.2d 525, 538 (Colo. 1995) (“[A]n appellate court must not disturb the delicate 
8 balance achieved by the [district] court in [its] division of property . . . unless there has been a clear abuse of discretion.”). C. The Dissipated Funds ¶ 17 Husband next contends that the district court erred by finding that he dissipated $262,000 related to Whitewater Hash because the evidence did not establish that he used the funds for an improper or illegitimate purpose in contemplation of the divorce. We disagree. ¶ 18 Generally, a court values marital property as of the date of the permanent orders hearing when the hearing precedes the entry of the decree. § 14-10-113(5); see In re Marriage of Turner, 2022 COA 39, ¶ 15. But when the court finds that a party dissipates a marital asset, that asset is valued as of the date it last existed. In re Marriage of Finer, 920 P.2d 325, 331 (Colo. App. 1996); see also Hunt, 909 P.2d at 542 (noting that a court may consider a party’s economic fault when allocating the marital estate). Dissipation can occur when a party depletes a marital asset for improper or illegitimate purposes in contemplation of the dissolution. See Finer, 920 P.2d at 331; In re Marriage of Riley-Cunningham, 7 P.3d 992, 995 (Colo. App. 1999). When a reasonable showing of dissipation is 
9 made, it becomes incumbent on the party who depleted the marital asset to establish that it was depleted for a proper purpose. In re Marriage of Martinez, 77 P.3d 827, 830 (Colo. App. 2003). ¶ 19 Whether a party dissipated marital property is a question of fact, and we will uphold the court’s determination when the record supports it. See id. at 830-31. ¶ 20 The court found that husband took $262,000 of the parties’ marital funds and put it into Whitewater Hash. The court found that husband had a duty to disclose and respond to discovery requests concerning the business and his use of these marital funds. The court also found that husband had the ability to provide this information, noting that he had access to the business’s financial information, was involved in its operations, and possessed “boxes” of documents related to the business. But, the court found, husband had taken no steps to account for the $262,000. The court acknowledged that husband submitted a document purportedly showing the business’s financials, but it found that this document was likely created “in an effort to prevent the [c]ourt from making an adverse inference” against him and that it had “no credible evidentiary value.” The court determined that, 
10 given husband’s conduct and his concealment of the financial information concerning the depletion of these funds, he had dissipated this $262,000. ¶ 21 Contrary to husband’s suggestion, the record supports the court’s reasonable inference that he improperly depleted these funds in contemplation of the divorce. Wife testified that husband took these marital funds after the parties had separated and during a time when they were discussing the dissolution of their marriage. Indeed, wife said that husband told her that if she cooperated with funding Whitewater Hash he would “give [her a] divorce.” Moreover, the record reveals that within months of purportedly closing Whitewater Hash, husband filed the dissolution petition. See In re Marriage of Nelson, 2012 COA 205, ¶ 27 (“[W]e must construe the evidence in the light most favorable to the prevailing party.”). And given the court’s finding, supported by the evidence, that husband failed to disclose financial information related to Whitewater Hash and his use of the $262,000, the court could draw a negative inference against him and find that he improperly depleted these marital funds. See In re Marriage of Sgarlatti, 801 P.2d 18, 19 (Colo. App. 1990). From this evidence, the court reasonably 
11 concluded that husband improperly depleted the $262,000 in contemplation of their divorce. See Martinez, 77 P.3d at 830-31; cf. In re Marriage of Paulsen, 677 P.2d 1389, 1390 (Colo. App. 1984) (“Just as a spouse’s actions in contribution to and preservation of the marital estate are relevant factors, . . . so are a spouse’s actions in depletion of the marital estate.”) (citations omitted). ¶ 22 Still, husband argues that the business merely failed and that his testimony showed that he used the funds for a proper purpose. But the court disagreed, finding that his testimony and other evidence concerning Whitewater Hash and his use of these funds “was not credible.” We must defer to this finding. See In re Marriage of Thorburn, 2022 COA 80, ¶ 49 (recognizing that the district court determines the credibility, weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn from the evidence); see also Martinez, 77 P.3d at 831 (noting that the district court was free to disbelieve a party’s testimony that his expenditures of marital funds were not improper dissipation in contemplation of the dissolution). ¶ 23 The district court therefore did not err by determining that husband dissipated $262,000 of marital funds. 
12 III. Disposition ¶ 24 The judgment is affirmed. JUDGE DUNN and JUDGE MOULTRIE concur.