### In re the MARRIAGE OF Olly Van Driest YOUNG, Appellee,

### and

### Rush Lawrence Young, Appellant.

#### No. 82CA1333.

Colorado Court of Appeals,
Div. I.

March 8, 1984.

Rehearing Denied April 12, 1984.

Kirkman, Henley & Pelican, Thomas C. Henley, Colorado Springs, for appellee.

Murray, Baker, & Wendelken, Ben S. Wendelken, Colorado Springs, for appellant.

SMITH, Judge.

This case involves the dissolution of a twenty-eight year marriage. The contested issues relate solely to division of property. Although the trial court found that the parties had entered into an antenuptial agreement, it concluded that by their mutual consent they had abandoned and rescinded it. The court's disposition of the property was therefore in accordance with the statute rather than under the terms of the agreement. The trial court likewise rejected the husband's contention that an increase in his separate property which occurred during separation and prior to entry of a dissolution decree should not be considered as marital property. From the property division order, husband appeals. We affirm.

The parties were married in the Netherlands in 1954. At the time of the marriage, wife was a Dutch National, and husband was a judge advocate officer in the United States Air Force. Dutch law provided that a woman could not consent to her own marriage before she had attained the age of 31 years. Wife was 26 at the time of the marriage and, therefore, was required to have the consent of either her parents or the Dutch courts before entering into the marriage.

Dutch law provided that, absent an antenuptial agreement, any property owned by a woman at the time of her marriage, or

later acquired by her became her husband's property. Accordingly, wife's parents caused an antenuptial agreement to be prepared, and conditioned their consent to the marriage upon husband and wife's execution of the agreement.

Admittedly, neither of the parties was desirous of the agreement or bargained for its terms. Nonetheless, they signed it, were married, and a few days later moved to Naples, Italy, which was the location of husband's next assignment.

Husband testified at the trial that immediately after the marriage he informed the wife that the antenuptial agreement was against her interests and told her that she ought to tear it up. He further testified that he believed that either he had torn it up or that it had been lost. He admitted that it was not until after the parties had separated some 22 or 23 years later that he discovered a copy of the agreement. He asserted that this agreement should govern disposition of the parties' property.

The agreement, as translated into English and made a part of the record, provided in part:

"Article 1. The spouses will be married without any community of property, so that both the complete community of property and that of Profit and loss and every other limited community are excluded ....

Article 2. The debts contracted by each of the future spouses and those that will be contracted after the solemnization of the marriage are for account of the one who contracts the debts ....

....

Article 4. The costs of the household and those of the education of the children shall be entirely a charge on the husband. The wife need not contribute anything to defray those expenses.

....

Article 7. The properties which are available at the time of dissolution of the marriage, or of judicial separation (a mensa et thoro) of which it does not appear to which of the spouses they belong, belong to the husband ...."

The parties testified that, notwithstanding the provisions of the antenuptial agreement, from the outset of the marriage, they pooled whatever income either had and used it to pay total family expenses and debts. Wife's contributions to family expenses, debts, and property acquisitions, came from the income she derived from teaching ballet, two individual inheritances she received, as well as from proceeds from the settlement of a claim based on a personal injury which she sustained in an automobile accident.

Each of the four or five homes the parties owned during the marriage were held in joint tenancy. The parties maintained a joint checking account for the first 16 years of the marriage until husband's retirement, and filed joint tax returns throughout the marriage.

There was no evidence in the record of any attempt to segregate income, expenses, assets, or debts of the parties until after their separation. Even in the separation agreement entered into between the parties in 1975 there was no reference made to the existence of any antenuptial agreement.

The trial court, based upon this evidence, ruled that the parties had abandoned the intent and purpose of their antenuptial agreement immediately upon the celebration of their marriage. It found that the parties had lived in a "traditional" marriage, sharing gain and loss, income and debt, equally, and that all resources with the exception of a piece of property in Teller County were pooled from the very beginning, and were applied to the needs, expenses, and acquisitions of the family. Based upon these findings, the trial court concluded that the antenuptial agreement had been abandoned by mutual consent, and that such consent was to be implied from the acts and conduct of the parties.

### I.

The issues relative to antenuptial agreements presented here appear to be ones of first impression in Colorado, namely: Are

such agreements subject to termination by the parties thereto, and if so, may such determination be by abandonment? Is evidence of the conduct of the parties sufficient to establish that such abandonment has taken place?

■ Other courts which have considered these issues have concluded that antenuptial contracts should be construed and treated as are other contracts. Concerning termination, the Supreme Court of Iowa said in *O'Dell v. O'Dell*, 238 Iowa 434, 26 N.W.2d 401 (1974):

> "Antenuptial contracts ... are in no way different from any other ordinary contracts. They are to be considered, construed, and treated as are contracts in general. Any executory contract, when the rights of others are not involved, may be rescinded all together or modified, by the mutual consent of the parties. Either party may waive any right thereunder. Those who are qualified to make an antenuptial or other contract are likewise qualified, by the mutual consent to eliminate or modify any part hereof, or to unmake the contract all together, or to substitute a new contract .... '[a] claim that the parties could make such a contract, and then not, as between themselves unmake or change it, would involve a legal absurdity.'"

This appears to be the generally accepted rule and we adopt it here.

As to the issue of whether the conduct of the parties may demonstrate abandonment or rescission of a contract, we are aware of only two Colorado cases dealing with such issue. In *H.T.C. Corp. v. Olds*, 486 P.2d 463 (Colo.App.1971) (not selected for official publication) we said:

> "[A] contract may be abandoned by mutual consent and that such consent may be implied from the acts and conduct of the parties. *City of Del Rio v. Ulen Contracting Corp.*, 5 Cir., 94 F.2d 701; *Treadwell v. Nickel*, 194 Cal. 243, 228 P. 25; *see* 5A A. Corbin, *Contracts* § 1236. A contract will be treated as abandoned when the acts of one party, inconsistent with its existence, are acquiesced in by another. *Baker v. School District # 48,*

120 Neb. 513, 233 N.W. 897; *Reichert v. Mulder*, 121 Neb. 11, 235 N.W. 680; *Tulsa Opera House Co. v. Mitchell*, 165 Okl. 61, 24 P.2d 997. Where acts and conduct are relied upon to constitute abandonment, however, they must be positive, unequivocal, and inconsistent with intent to be further bound by the contract. *Sauder v. Dittmar*, 10 Cir., 118 F.2d 524, 530. *See Hoff v. Girdler Corp.*, 104 Colo. 56, 88 P.2d 100." *See also In re Estate of Barnes*, 41 Colo.App. 246, 586 P.2d 238 (1978).

The same rule was again stated in *Lansdale v. Geerlings*, 523 P.2d 133 (Colo.App. 1974) (not selected for official publication). There this court also dealt specifically with the issue of proof based upon evidence of the conduct of the parties. We held that:

> "In the presence of conflicting evidence, the question of whether a contract has been rescinded by mutual agreement is properly one of fact. 17 Am.Jur.2d Contracts § 490. Where, as here, the testimony was in conflict, [i]t was up to the trial court—and it is not our province—to measure the credibility and weight of the testimony of these witnesses. *People ex rel. Dunbar v. Lee Optical Co.*, 168 Colo. 345, 452 P.2d 21." *See also Randall v. Carroll*, 30 Colo.App. 45, 488 P.2d 250 (1971).

■ Here, there is ample evidence to support the trial court's findings that the antenuptial agreement had been rescinded or abandoned by mutual agreement, and we may not substitute our findings of fact for those made by the trial court.

## II.

■ The husband next argues that the wife is not entitled to share in the increased value of the husband's separate property that occurred between the time the parties separated and the date on which the divorce decree was entered. In order for this argument to have any validity we would have to conclude that the assets of the parties are to be valued as of the time of the separation. This would be contrary to the statutory mandate that property be

valued as of the date of the entry of the decree. Section 14–10–113(5), C.R.S. Accordingly, the court acted properly in treating the full increase in value of the parties' separate property as marital property pursuant to § 14–10–113(4), C.R.S., even though the parties had separated prior to the decree.

Husband's final contention concerning costs of sale are without merit.

Judgment affirmed.

PIERCE and TURSI, JJ., concur.