COLORADO COURT OF APPEALS                                    **2017COA54**

Court of Appeals No. 16CA0388
Prowers County District Court No. 15PR30000
Honorable Douglas A. Tallman, Judge
Honorable M. Jon Kolomitz, Judge

In re the Estate of Paul J. Gadash, deceased.

Lorella Gadash,

Petitioner-Appellant,

v.

Estate of Paul J. Gadash by and through its Personal Representative, Linda
Rose,

Appellee.

APPEAL DISMISSED IN PART
AND ORDER AFFIRMED

Division V
Opinion by JUDGE ROMÁN
Booras and Fox, JJ., concur

Announced April 20, 2017

Mark S. Davis, Lamar, Colorado, for Petitioner-Appellant

The Law Offices of David S. Anderson, David Anderson, Greeley, Colorado, for
Appellee

¶ 1    In this probate action, Lorella Gadash (Mrs. Gadash) appeals the probate court's orders barring her creditor's claim for services rendered to her husband, Paul J. Gadash (Mr. Gadash), and denying her petition for spouse's elective share in favor of the Estate of Paul J. Gadash, by and through its personal representative, Linda Rose.  We conclude that (1) Mrs. Gadash failed to timely appeal the final order barring her creditor's claim, and (2) the probate court properly considered Mr. and Mrs. Gadash's second marital agreement in denying Mrs. Gadash's petition for spouse's elective share.  Accordingly, we dismiss the appeal in part and affirm the order of the probate court.

## I.    Background

¶ 2    The day before their 1975 wedding, Mr. and Mrs. Gadash executed an antenuptial agreement (the first marital agreement).  Under the terms of the first marital agreement, each spouse waived any right to the other's pre-marital property.  Specifically, Mr. Gadash owned two commercial properties in Kansas.

¶ 3    During their first year of marriage, Mr. and Mrs. Gadash jointly acquired a hotel.  In 1978, they entered into a second marital agreement.  Under the second marital agreement, Mrs. Gadash

1

waived her right to an elective share of Mr. Gadash's estate and any benefit that would pass to her from it. Mr. Gadash also waived the right to an elective share of one-half of Mrs. Gadash's estate, but only as to property given to Mrs. Gadash by her parents.[1]

¶ 4 After the second marital agreement, Mr. Gadash liquidated his Kansas properties, and he and Mrs. Gadash jointly acquired a horse property, lots adjacent to their hotel property, and a residential property. Mr. Gadash also separately bought and sold a different motel. Mrs. Gadash received a home from her parents.

¶ 5 In 2001, Mr. and Mrs. Gadash entered into a third marital agreement. In this agreement, they mutually waived rights to certain real property listed in two exhibits attached to the agreement. Of note, the third marital agreement specifically incorporated the terms of the first marital agreement but was silent as to the second marital agreement.

¶ 6 After the third marital agreement, Mr. and Mrs. Gadash re-allocated the properties held by each of them. Mr. Gadash conveyed the lots adjacent to the hotel to Mrs. Gadash and

---

[1] Mrs. Gadash anticipated a testamentary gift from a trust established by her parents.

purchased three additional commercial properties. Mrs. Gadash conveyed the jointly held residential property and hotel to Mr. Gadash and retained the residential property given to her by her parents.

¶ 7    In 2008, Mr. Gadash executed his last will and testament. In it, he left all of his probate estate to his daughter, who is also the personal representative of the estate. He also left a $2000 gift to Mrs. Gadash. Mrs. Gadash executed a will in 2014, leaving none of her probate estate to Mr. Gadash.

¶ 8    On December 31, 2014, Mr. Gadash died and his will was admitted into probate in an unsupervised administration of estate, meaning "only the barest minimum of procedure is required and no hearings are held, unless warranted." 24 Catherine Anne Seal, *Colorado Practice Series, Elder Law* § 16:2, Westlaw (database updated Nov. 2016).

¶ 9    On March 4, 2015, Mrs. Gadash filed a petition for spouse's elective share of Mr. Gadash's estate. The petition was filed under the case number governing the administration of Mr. Gadash's estate. Notwithstanding the terms of the will, in her petition, Mrs. Gadash argued that because Mr. Gadash's will provided no gift to

3

Mrs. Gadash, under section 15-11-202, C.R.S. 2016, she was entitled to elect an amount equal to fifty percent of the value of the marital property portion of Mr. Gadash's estate. She further alleged that the second marital agreement was not controlling over Mr. Gadash's estate.

¶ 10    On the same day, Mrs. Gadash separately filed a creditor's claim against the personal representative, in which she sought compensation for end-of-life services. In her creditor's claim, Mrs. Gadash argued that she should be compensated out of Mr. Gadash's estate for providing twenty-four-hour-a-day care to Mr. Gadash for the year and a half preceding his death. Mrs. Gadash's creditor's claim did not reference the petition for spouse's elective share. It did, however, acknowledge the existence of marital agreements precluding her from taking under the estate of Mr. Gadash.

¶ 11    On September 24, 2015, the probate court ruled that Mrs. Gadash's creditor's claim was barred for failure to protest the personal representative's notice of disallowance before the statutory deadline. Separately, on January 19, 2016, the probate court denied Mrs. Gadash's petition for spouse's elective share.

¶ 12 On March 4, 2016, Mrs. Gadash filed a notice of appeal, challenging the probate court's rulings against her on both the creditor's claim and petition for spouse's elective share.

## II.    Discussion

¶ 13 We first address Mrs. Gadash's creditor's claim; then, we turn to the petition for spouse's elective share.

### A.    Creditor's Claim

¶ 14 The personal representative contends that the probate court's order barring Mrs. Gadash's creditor's claim was a final order, which Mrs. Gadash failed to timely appeal. Mrs. Gadash asserts that the order barring her creditor's claim did not become final until the probate court ruled on her petition for spouse's elective share, and, thus, her appeal was timely. Because we conclude that Mrs. Gadash's creditor's claim was governed by a proceeding independent of her petition for spouse's elective share, we agree with the personal representative.[2] Accordingly, we lack jurisdiction

---

[2] The personal representative also asserts that the probate court properly deemed Mrs. Gadash's creditor's claim barred. In light of our determination that we lack jurisdiction to review that order, we do not reach this alternative argument.

to consider the probate court's order barring Mrs. Gadash's creditor's claim.

### 1. Standards

¶ 15    The existence of subject matter jurisdiction is a question of law that we review de novo. *City of Boulder v. Pub. Serv. Co. of Colo.*, 996 P.2d 198, 203 (Colo. App. 1999).

¶ 16    "The timely filing of a notice of appeal is a jurisdictional prerequisite to appellate review." *In re Marriage of Farr*, 228 P.3d 267, 268 (Colo. App. 2010) (citation omitted). The notice of appeal must be filed within forty-nine days of the entry of a final order. C.A.R. 4(a).

### 2. Jurisdiction

¶ 17    Resolution of the jurisdictional question in this case requires us to determine (a) when an order of the probate court is final for purposes of timely appeal, and the related question of (b) what constitutes a discrete proceeding. *See Scott v. Scott,* 136 P.3d 892, 894 (Colo. 2006).

### a. When is a Probate Order Final?

¶ 18 In *Scott v. Scott,* our supreme court held:

> [A]n order of the probate court is final if it ends the particular action in which it is entered and leaves nothing further for the court pronouncing it to do in order to completely determine the rights of the parties *as to that proceeding.*

*Id.* at 896 (emphasis added) (noting that "the same rules of finality apply in probate cases as in other civil cases").

¶ 19 Thus, the finality of a probate order hinges on the determination of rights within the underlying proceeding. *See id.* We turn next to what constitutes a probate proceeding. *Id.*

### b. What is a Probate Proceeding?

¶ 20 The probate code's definition of 'proceeding' provides some guidance. *Id.* According to the statute entitled "Scope of Proceedings," in an unsupervised administration, "[e]ach proceeding before the court . . . is independent of any other proceeding involving the same estate." § 15-12-107(1)(a), C.R.S. 2016. "Thus, the code instructs that the unsupervised administration of an estate may involve multiple proceedings, that a petition initiates an independent proceeding and defines its scope, and that a single

proceeding may dispose of multiple claims." *Scott*, 136 P.3d at 896 (discussing section 15-12-107(1)(a), (b)).

¶ 21    In addition, the *Scott* court pointed to a comment to section 3-107 of the Uniform Probate Code (UPC), after which the Colorado Probate Code is modeled. *Id.* at 896. "When resort to the judge is necessary or desirable to resolve a dispute or to gain protection, the scope of the proceeding if not otherwise prescribed by the Code is framed by the petition." UPC § 3-107 cmt. (Unif. Law Comm'n 2010).

¶ 22    After setting out this authority, the *Scott* court announced:

> [O]nce a petition is filed, it defines a proceeding. Further pleadings relating to the same subject matter, whether labeled motions or petitions, are part of the same proceeding. When the subject matter of two petitions overlap, it would generally be appropriate to consider both petitions as belonging to the same proceeding.

*Scott*, 136 P.3d at 897 (quoting *In re Estate of Newalla*, 837 P.2d 1373, 1377 (N.M. Ct. App. 1992)).

i.    Application in *Scott v. Scott*

¶ 23    In *Scott*, the supreme court found that two petitions were part of a single proceeding because they "involved the same subject

8

matter." *Id.* at 898. Specifically, petitioner's initial filing raised three claims, one of which requested that the probate court refuse to admit a codicil to probate. *Id.* Respondent objected, arguing that there was no basis to exclude the codicil. *Id.* at 894. Respondent also filed a separate petition for formal probate of the codicil and appointment of a personal representative. *Id.* at 893-94. The probate court granted a motion for partial summary judgment declaring the codicil invalid. *Id.*

¶ 24 The question in *Scott* was whether the probate court's order granting partial summary judgment on the codicil issue was a final appealable order. *See id.* The supreme court determined that, because it "adjudicated fewer than all the parties' claims, it was not a final judgment." *Id.* at 894. It did so based on the following reasoning.

¶ 25 First, the initial petition "initiated the proceeding and defined its scope." *Id.* at 898. In *Scott,* the first petition raised three claims.

¶ 26 Second, all subsequent pleadings that related to the claims set forth in the initial petition, including those labeled "motions or petitions," were deemed part of the same proceeding. *Id.* at 897 (citation omitted). Because respondent's petition "involved the same

9

subject matter" as petitioner's initial petition — namely, whether the codicil should be admitted to probate — it was part of the same proceeding. *Id.* at 898.

¶ 27    Third, because the probate court's order did not resolve all of the claims in the initial petition, it was not final. *Id.*

ii.    Application of *Scott* to this Case

¶ 28    Applying *Scott* here requires us to reach a different result.

¶ 29    First, Mrs. Gadash's creditor's claim and petition for spouse's elective share were filed separately, and raised two distinct claims. These claims were subject to different statutory requirements and alleged different facts:

- The first pleading in this case was a petition for spouse's elective share of Mr. Gadash's estate, pursuant to section 15-11-202. Under section 15-11-202(1), "[t]he surviving spouse of a decedent who dies domiciled in this state has a right of election . . . to take an elective-share amount equal to fifty percent of the value of the marital-property portion of the augmented estate." Mrs. Gadash's petition for spouse's elective share alleged that she was left out of Mr. Gadash's will.

10

- Separately, Mrs. Gadash filed a creditor's claim seeking compensation for rendering end-of-life services to Mr. Gadash, pursuant to section 15-12-801, C.R.S. 2016. Under section 15-12-801, "[t]he decedent's creditors are entitled, within the time limits imposed by the controlling state law, to have their claims satisfied out of the decedent's probate estate." Restatement (Third) of Prop.: Wills and Donative Transfers § 1.1 cmt. f (Am. Law. Inst. 1999). Mrs. Gadash's creditor's claim alleged that Mr. Gadash lived at home under Mrs. Gadash's twenty-four-hour-a-day care for a year and a half before his death and comparable care would have cost the estate $12 per hour. Mrs. Gadash therefore requested $5000 per month retroactive to the first date of services rendered.

¶ 30    Second, Mrs. Gadash's creditor's claim and petition for spouse's elective share neither overlapped nor involved the same subject matter. *See Scott*, 136 P.3d at 897. In *Scott*, the second petition responded directly to the first petition; whereas, in this case, the subject matters of Mrs. Gadash's claims are unrelated. *Cf. In re Estate of Scott*, 151 P.3d 642, 645 (Colo. App. 2006)

11

(holding a petition part of the same proceeding as an earlier petition because the former "relate[d] to the same set of claims as those" in the latter).

¶ 31     Third, the probate court's order barring Mrs. Gadash's creditor's claim disposed of everything raised in that filing. *See Scott*, 136 P.3d at 898.

¶ 32     Accordingly, we conclude that Mrs. Gadash's petition for spouse's elective share and creditor's claim initiated independent proceedings. Therefore, as to the discrete proceeding governing Mrs. Gadash's creditor's claim, the probate court's order was final.[3]

¶ 33     We recognize that Mrs. Gadash's petition for spouse's elective share was filed "in the alternative of receiving compensation for services rendered pursuant to her creditor's claim," and that the two pleadings bore the same case number. Nonetheless, Mrs.

---

[3] Mrs. Gadash argues that the probate court's order on her creditor's claim was not certified final under C.R.C.P. 54(b). Indeed, the *Scott* court observed that, if there is any question as to a probate order's finality, "a party may request that the probate court certify [the] order as final for appeal pursuant to C.R.C.P. 54(b)." *Scott v. Scott*, 136 P.3d 892, 897 (Colo. 2006). Such certification was not necessary here, however, because the order barring Mrs. Gadash's creditor's claim disposed of "all the claims presented in [the] proceeding." *Id.*

12

Gadash's claims were not "related." *Id.* at 897. Likewise, the case number is not dispositive of the scope of the proceeding.[4] *See Estate of Scott,* 151 P.3d at 644 (noting that the supreme court in *Scott* did not intend "to enable parties to obtain a 'final, appealable judgment' by filing a new petition under a new case number").

¶ 34 To be sure, the supreme court referenced the fact that the petitions in *Scott* were filed under the same case number. 136 P.3d at 898. But it did so only after concluding that, unlike here, the second petition "was responsive to" the first. *Id.* A contrary determination — that all claims against an estate are "related" because they are filed under the same case number — would violate *Scott*'s determination that "there can be more than one proceeding in the administration of a single estate." *Estate of Scott,* 151 P.3d at 644.

¶ 35 Moreover, the "legal effect of the order" barring Mrs. Gadash's creditor's claim supports our conclusion. *Luster v. Brinkman,* 250 P.3d 664, 666 (Colo. App. 2010) (directing courts to look to the legal

---

[4] The petition for spouse's elective share and the creditor's claim bore the same case number because they were filed within the administration of a single estate.

effect of an order, "rather than its form," in determining finality).

By barring Mrs. Gadash from bringing a creditor's claim, the probate court's order "dispose[d] of [that] particular action and prevent[ed] further proceedings as effectually as would any formal judgment." *Id.* (citation omitted); *cf. Estate of Scott,* 151 P.3d at 645 (holding a probate order was not final because it "did not finally conclude any substantive matter and [had] no preclusive effect").

¶ 36    For these reasons, we hold that Mrs. Gadash's creditor's claim initiated a proceeding independent of the petition for spouse's elective share, and that the probate court's order barring her creditor's claim "completely determine[d] the rights of the parties as to that proceeding." *Scott,* 136 P.3d at 896.  Because Mrs. Gadash did not timely appeal the probate court's final order barring her creditor's claim, we lack jurisdiction to review it.  *Marriage of Farr,* 228 P.3d at 268.

¶ 37    We therefore dismiss this portion of the appeal.

### B.    Petition for Spouse's Elective Share

¶ 38    Mrs. Gadash also contends that the probate court erred when it considered the terms of the second marital agreement in denying her petition for spouse's elective share.  Specifically, she argues that

14

the second marital agreement was rendered void by the third marital agreement. We are not persuaded.

### 1. Standard of Review

¶ 39    The interpretation of a contract, including whether an unambiguous contract is fully integrated, is a question of law that we review de novo. *Ad Two, Inc. v. City & Cty. of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 376 (Colo. 2000); *Midwest Builder Distrib., Inc. v. Lord & Essex, Inc.*, 891 N.E.2d 1, 18 (Ill. App. Ct. 2007); *see also Colowyo Coal Co. v. City of Colorado Springs*, 879 P.2d 438, 443 (Colo. App. 1994) ("When the evidence of an agreement consists of documents, as here, the determination of their effect is a matter of law.") (citation omitted).

¶ 40    Marriage agreements should be construed and treated in the same manner as other contracts, and, in construing them, we must give effect to the parties' intent. *In re Marriage of Fiffe*, 140 P.3d 160, 163 (Colo. App. 2005). Where the contract's terms are unambiguous, we determine the parties' intent from the language of the instrument itself. *Ad Two, Inc.*, 9 P.3d at 376. We interpret contracts based on the "plain and generally accepted meaning of the words employed." *Id.*

15

### 2. Analysis

¶ 41    Mrs. Gadash asserts that the following paragraph in the third marital agreement was a merger or integration clause, which rendered the second marital agreement void:[5]

> The parties agree that this agreement shall only apply to those properties described in Exhibits "A" and "B" and shall not effect [sic] any other property or rights they may have unless those rights were first addressed in the [first marital agreement].

¶ 42    We agree with the personal representative that this is not a merger or integration clause.

¶ 43    A merger or integration clause is a statement "that a written contract is integrated, that all conditions, promises, or representations are contained in the writing, and that the parties are not to be bound except by the writing . . . ."  11 Williston on Contracts § 33:23 (4th ed.) Westlaw (database updated May 2016).

¶ 44    Parties may use a merger or integration clause to "substitute an entirely new contract for a previous one, particularly where the

---

[5] The personal representative asserts Mrs. Gadash did not preserve this argument because she did not raise it at the trial level.  On our review of Mrs. Gadash's pre-trial brief, however, we conclude this argument was preserved.  Thus, we consider it.

16

modified or new contract is in writing and is valid in all other respects." *B-S Steel of Kan., Inc. v. Tex. Indus., Inc.*, 439 F.3d 653, 661 (10th Cir. 2006) (finding an earlier contract was substituted where a later contract contained an integration clause); *In re Marriage of Young*, 682 P.2d 1233, 1236 (Colo. App. 1984) ("Those who are qualified to make an antenuptial or other contract are likewise qualified . . . to unmake the contract all together, or to substitute a new contract . . . .") (citation omitted). A "binding integrated agreement discharges" inconsistent prior agreements. Restatement (Second) of Contracts § 215 cmt. a (Am. Law Inst. 1981).

¶ 45 Here, the third marital agreement contains no language indicating that it constituted the entire agreement between the parties with respect to its subject matter. *Cf. Nelson v. Elway*, 908 P.2d 102, 107 & n.1 (Colo. 1995) (finding a "plain[] and unambiguous[]" merger clause where an agreement stated: "This Agreement constitutes the entire Agreement between the parties pertaining to the subject matter contained herein, and supersedes all prior agreements, representations and understandings of the parties"); *cf. In re Centrix Fin., LLC*, 434 B.R. 880, 885 (Bankr. D.

Colo. 2010) ("This Agreement, including any documents referred to herein and attached hereto, constitutes the entire agreement between the parties with respect to its subject matter and supersedes all prior representations, understanding or agreements between the parties.").

¶ 46     Indeed, language in the third marital agreement expressly *limited* its scope to "only . . . those properties described" in the exhibits attached to the third marital agreement.  It said nothing about the already existing document pertaining to the same general subject matter, nor did it purport to supersede the second marital agreement.  *See Colowyo Coal Co.*, 879 P.2d at 443 (holding an agreement was not nullified where "[n]othing in the plain language of the document indicate[d] an intention to substitute the [subsequent] agreement for the original contract"); *see also Hill v. Ricoh Ams. Corp.*, 603 F.3d 766, 778 (10th Cir. 2010) (holding that a subsequent agreement did not supersede a prior agreement where the former did "not explicitly state that [the prior agreement was] nullified . . . . [n]or [was] nullification implicit" because the subsequent agreement failed to mention matters discussed in the prior agreement) (citation omitted).

¶ 47    Moreover, the second and third marital agreements govern distinct property. Thus, they are independently enforceable and can be given full force and effect without contradicting one another.[6] Mrs. Gadash can be denied a share of Mr. Gadash's estate, pursuant to the second marital agreement, while also waiving rights to the distinct real property listed in the exhibits attached to the third marital agreement.

¶ 48    Under these facts, because the third marital agreement contains no merger or integration clause and does not contradict the terms of the second marital agreement, we conclude it does not supersede the second marital agreement.[7]

---

[6] In order for a subsequent contract to implicitly supersede an earlier one, the two agreements must cover the same subject matter and be inconsistent with one another. *Compare Coop. Refinery Ass'n v. Consumers Pub. Power Dist.*, 190 F.2d 852, 856 (8th Cir. 1951) ("A subsequent contract completely covering the same subject-matter, and made by the same parties, as an earlier agreement, but containing terms inconsistent with the former contract, so that the two cannot stand together . . . is substituted for the earlier contract."), *with NorAm Drilling Co. v. E & Pco Int'l, LLC*, 178 So. 3d 1061, 1068 (La. Ct. App. 2015) ("A letter agreement alters only those terms of the original agreement to which it refers, leaving intact any unmentioned portions of the original agreement that are not inconsistent with the modification.").
[7] We reject Mrs. Gadash's argument that, by failing to incorporate the second marital agreement by reference, the third marital

¶ 49    We therefore agree with the district court that nothing indicates Mr. and Mrs. Gadash mutually intended for the third marital agreement to render the second marital agreement void.

### III.    Conclusion

¶ 50    The appeal is dismissed in part, and the order is affirmed.

JUDGE BOORAS and JUDGE FOX concur.

---

agreement impliedly revoked the second marital agreement. This argument is premised on Mrs. Gadash's contention that the third marital agreement contained a merger or integration clause. Because we conclude the third marital agreement did not integrate or merge with the second marital agreement, we reject Mrs. Gadash's related argument as to incorporation by reference.