24CA0179 Marriage of Watters 03-20-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0179
Arapahoe County District Court No. 20DR31696
Honorable Michelle Jones, Judge

---

In re the Marriage of

Joshua Watters,

Appellant,

and

Jeanise Watters,

Appellee.

---

APPEAL DISMISSED IN PART, JUDGMENT AFFIRMED IN PART
AND REVERSED IN PART, AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE LIPINSKY
Johnson and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 20, 2025

---

The Law Office of C. Robert Biondino Jr., P.C., C. Robert Biondino Jr., Highlands Ranch, Colorado, for Appellant

The W Law, Carolyn C. Witkus, Danielle N. Moylett, Denver, Colorado, for Appellee

¶ 1     Joshua Watters (husband) appeals the judgment addressing his and Jeanise Watters (wife)'s marital agreement (the agreement), property division, spousal maintenance, and child support.  He also appeals the district court's post-decree order denying his C.R.C.P. 70 motion.  We affirm the judgment in part, reverse it in part, and remand the case to the court for further proceedings.  We dismiss as moot husband's appeal of the court's denial of his C.R.C.P. 70 motion.

## I.     Relevant Facts

¶ 2     The parties married in 1999 and have three children.  The parties entered into the agreement sixteen years later.  Although husband consulted with an attorney regarding the agreement, he discontinued the representation before he signed the agreement.  Nonetheless, by signing the agreement, he represented that he "believe[d], based on his discussions with [his former attorney], that [the] [a]greement [was] fair, equitable, and reasonable."

¶ 3     In the agreement, the parties categorized certain parcels of real property as separate or marital.  In recognition of wife sacrificing her career and focusing on raising the children, the

parties stipulated that, upon dissolution of the marriage, she would be entitled to spousal maintenance and health insurance for life.

¶ 4     In October 2020, husband filed a petition to dissolve the marriage.

¶ 5     At a status conference, the court told the parties to brief the issue of the agreement's enforceability and said that it would issue a ruling without a hearing.  Wife filed a motion to enforce the property division aspects of the agreement (the motion to enforce). In his response, husband argued that the agreement was unenforceable, alleging duress, unconscionability, and abandonment.  The court granted the motion to enforce.

¶ 6     In April 2022, the court entered a decree dissolving the marriage.  In accordance with the agreement, the court found that wife and husband had separate property worth $1,442,549 and $317,626, respectively, and then equally divided the marital estate, with each party receiving approximately $1.1 million in assets.  The court also ordered the parties to file their tax returns for the years 2019 through 2021 as married filing separately.  And it directed husband to pay $11,000 in monthly spousal maintenance for thirteen years and $231 in monthly child support for their

2

remaining minor child until the child's emancipation. In addition, the court required husband to pay for wife's health insurance for life per the agreement and to establish a $25,000 escrow account to cover wife's "not yet incurred medical debt to the Mayo Clinic in the estimated amount of $39,500."

¶ 7 The court later denied the parties' respective C.R.C.P. 59 motions, in which they sought, among other relief, amendments to the court's property division.

¶ 8 On September 27, 2023, the court summarily denied husband's forthwith C.R.C.P. 70 motion, in which he sought an order compelling wife to sign releases for Small Business Administration (SBA) records related to certain COVID-relief loans. Husband alleged that he had only recently learned about the loans, even though his name appeared on the loan applications.

## II. The Agreement

### A. Duress

¶ 9 Husband contends that the court should have invalidated the agreement because he signed it under duress. We disagree.

¶ 10 The Uniform Premarital and Marital Agreements Act (UPMAA), sections 14-2-301 to -313, C.R.S. 2024, governs. § 14-2-303(1),

C.R.S. 2024; *In re Marriage of Zander*, 2019 COA 149, ¶ 11, 486 P.3d 352, 355, *aff'd*, 2021 CO 12, 480 P.3d 676.

¶ 11 As pertinent here, the UPMAA defines a "[m]arital agreement" as "an agreement between spouses who intend to remain married which affirms, modifies, or waives a marital right or obligation during the marriage or at . . . marital dissolution." § 14-2-302(2), C.R.S. 2024; *see In re Marriage of Blaine*, 2021 CO 13, ¶ 19, 480 P.3d 691, 695.

¶ 12 A marital agreement is unenforceable if a party against whom enforcement is sought proves that the party entered into the agreement involuntarily or under duress. § 14-2-309(1)(a), C.R.S. 2024. Accordingly, husband bore the burden of proving, by a preponderance of the evidence, that he signed the agreement under duress. § 14-2-309(1); *see* § 13-25-127(1), C.R.S. 2024 (providing that the burden of proof in civil cases is a preponderance of the evidence).

¶ 13 Duress exists if a party's manifestation of assent to a contract is induced by an improper threat that leaves no reasonable alternative. *See Vail/Arrowhead, Inc. v. Dist. Ct.*, 954 P.2d 608, 612 (Colo. 1998).

To establish duress as ground[s] for the avoidance of a contract, conveyance, or other act, it is not alone sufficient to show the exertion of pressure by threats or even by physical compulsion, but it must also clearly appear that the force or threats employed actually subjugated the mind and will of the person against whom they were directed, and were thus the sole and efficient cause of the action which he took.

*Premier Farm Credit, PCA v. W-Cattle, LLC*, 155 P.3d 504, 521 (Colo. App. 2006) (quoting *Wiesen v. Short*, 604 P.2d 1191, 1192 (Colo. App. 1979)).

¶ 14     The existence of duress is ordinarily a question of fact to be determined according to the circumstances of the case. *Id.* We will not disturb a district court's factual determinations unless they are clearly erroneous, meaning the record does not support them. *In re Marriage of Young*, 2021 COA 96, ¶ 8, 497 P.3d 524, 528.

¶ 15     Husband alleged that

- wife subjected him to years of manipulation, demeaning comments, and "bull[ying]," creating an environment in which he felt pressured to comply with her demands even if he disagreed with them;

5

- wife threatened to withhold sex unless he signed the agreement;

- wife manipulated him by saying she did not trust him and that signing the agreement was necessary to rebuild that trust;

- wife issued an ultimatum, saying their marriage would end and he would have to "fight to see" the children if he refused to sign the agreement; and

- wife coerced him into signing the agreement even though she knew of his devout Catholic faith and his belief that divorce was "one of the largest sins."

¶ 16 The court, however, concluded that husband was not coerced into signing the agreement. The court found that husband consulted with an attorney before signing the agreement and actively participated in drafting it, even proposing revisions eight days before signing it. And the parties said in the agreement that husband had it reviewed by an attorney and believed it to be fair, equitable, and reasonable. The court further found there was no evidence that husband was under the influence of alcohol or drugs when he signed it.

¶ 17    From those findings, the court determined that husband failed to prove duress.  We see no clear error because the record supports the court's findings and determination of lack of duress.  *See* § 14-2-309(1); *see also Premier Farm Credit*, 155 P.3d at 521.

## B.    Unconscionability

¶ 18    Husband maintains that the property division provisions of the agreement are invalid because the court did not review them for unconscionability.  He is mistaken.

¶ 19    Under the UPMAA, no review for unconscionability is required for property division pursuant to a marital agreement, so long as full disclosure and the absence of fraud or overreaching are established.  *See* § 14-2-309; *see also In re Marriage of Ikeler*, 161 P.3d 663, 669 n.8 (Colo. 2007) (Under the UPMAA's predecessor, "marital agreements as to property division are neither void as against public policy generally, nor are they subject to review for unconscionability."); *Newman v. Newman*, 653 P.2d 728, 733-34 (Colo. 1982) ("Once the stringent tests of full disclosure and lack of fraud or overreaching are met, the parties are free to agree to any arrangement for division of their property . . . .").

### C. Abandonment

¶ 20    Husband argues that the court erred by enforcing the agreement because the parties' subsequent actions demonstrated they had mutually abandoned the agreement's property division terms. We disagree.

¶ 21    Under the agreement, wife's separate property, as relevant here, included

- 19961 East Tufts Drive (Tufts), which the parties jointly owned and was encumbered by a debt in husband's name;

- 17316 East Rice Circle; and

- 6071 South Tempe Way (Tempe), which the parties jointly owned and was encumbered by a debt in husband's name.

¶ 22    Husband's separate property, as relevant here, included 4636 South Dillon Court (Dillon), which the parties held as tenants in common through Watters Management, LLC.

¶ 23    The agreement designated as marital property:

- the primary marital residence at 19594 East Pinewood Drive (Pinewood), which the parties owned as tenants in

common, with husband solely responsible for the mortgage during the marriage; and

- 4261 South Fairplay Circle (Fairplay), which the parties held as tenants in common through Watters Management, LLC, with husband solely responsible for the mortgage during the marriage.

¶ 24 Following the execution of the agreement, husband reported that the parties "transferred" Tufts, Tempe, Pinewood, and Fairplay to Watters Tufts Properties, LLC, Watters Tempe Properties, LLC, Watters Pinewood Properties, LLC, and Watters Fairplay, LLC, respectively. The parties had jointly formed those entities.

¶ 25 On appeal, husband argues that

- those LLC transfers were inconsistent with the agreement's terms;

- even though the agreement said that wife claimed Tufts and Tempe as her separate property, she subsequently allowed husband to convey a 50% ownership interest in those properties to Watters Tufts Properties, LLC, and Watters Tempe Properties, LLC, respectively; and

9

- contrary to the agreement's stipulation that husband would be responsible for paying the mortgages on Tufts and Pinewood, wife paid them with rental income she earned from those properties.

¶ 26 Like other types of contracts, the parties may waive the enforcement of certain provisions of a marital agreement. *See In re Estate of Gadash*, 2017 COA 54, ¶ 40, 413 P.3d 272, 277 ("Marriage agreements should be construed and treated in the same manner as other contracts, and, in construing them, we must give effect to the parties' intent."); *In re Marriage of Fiffe*, 140 P.3d 160, 163 (Colo. App. 2005) (holding that premarital agreements should be construed in the same manner as other contracts); *see also Magliocco v. Olson*, 762 P.2d 681, 685 (Colo. App. 1987) (noting that a party may waive provisions of a contract by engaging in conduct that is inconsistent with the enforcement of those provisions); *In re Marriage of Zimmerman*, 714 P.2d 927, 929 (Colo. App. 1986) (holding that parties abandoned specific provisions of their premarital agreement by entering into a joint business venture and thereby sharing the business's liabilities in accordance with their respective stock interests, and not as specified in the agreement).

¶ 27    Parties may also agree to abandon or rescind a marital

agreement in its entirety. *See In re Marriage of Young*, 682 P.2d

1233, 1236 (Colo. App. 1984) (premarital agreement was

abandoned and rescinded by the parties' mutual consent, as

evidenced by their pooling and holding their property in joint

tenancy).

¶ 28    A marital agreement may be abandoned or rescinded by

mutual consent, including by consent implied from the parties'

actions or conduct. *See id.* (citation omitted). But such actions or

conduct "must be positive, unequivocal, and inconsistent with

intent to be further bound by the contract." *Id.* (citation omitted).

¶ 29    Whether parties have abandoned or rescinded a marital

agreement through their actions or conduct is a factual question for

the court to decide. *Id.*

¶ 30    While we agree with husband that the court did not directly

address the abandonment issue, we conclude that the issue is

properly before us. This is so because the court said it had (1)

reviewed husband's response to wife's motion to enforce, in which

he raised the abandonment issue, and her reply, in which she

contested the issue; (2) acknowledged the parties' agreement to

forgo an evidentiary hearing and that the court could rule based on the court filings; and (3) determined that the agreement was valid and enforceable.  This record shows that the court implicitly found that the parties did not abandon or rescind the agreement through their subsequent actions and conduct.  *See In re Parental Responsibilities Concerning S.Z.S.*, 2022 COA 105, ¶ 23, 521 P.3d 1025, 1032 (noting that a district court's finding may be implicit in its ruling); *see also In re Marriage of Udis*, 780 P.2d 499, 504 (Colo. 1989) (explaining that an appellate court may presume that the court considered all the evidence presented when arriving at its decision).

¶ 31     We conclude that the record supports the court's determination that the parties' actions or conduct was consistent with the agreement and did not establish that the parties intended to abandon or rescind the agreement's property division terms.  *See Young*, 682 P.2d at 1236.

¶ 32     The property transfers to the LLCs after the parties entered into the agreement did not clearly or unambiguously signal an intention to abandon the agreement.  *See* § 14-2-309(1)(a)*; see also Young*, 682 P.2d at 1236.  Dillon and Fairplay were titled in the

names of the parties' jointly owned LLCs at the time the parties executed the agreement. Even though Tufts and Tempe were jointly titled but encumbered solely in husband's name, the agreement explicitly designated them as wife's separate property. *See In re Marriage of Stumpf*, 932 P.2d 845, 847 (Colo. App. 1996) (explaining that the form in which title is held is not dispositive in determining whether property is marital or separate); *Martinez v. Gutierrez-Martinez*, 77 P.3d 827, 828-29 (Colo. App. 2003) (upholding exclusion of property from marital estate "notwithstanding that title was in [the] wife's name"). Consequently, wife's consent to convey a 50% interest in those properties to the LLCs did not establish mutual consent to abandon the agreement.

¶ 33    Contrary to husband's claim, the agreement did not provide that he alone could make the mortgage payments for Tufts. Instead, the agreement says that, at the time of execution, the "encumbrance associated with [the] property [was] in [h]usband's name alone." Wife's assumption of the mortgage payments for Tufts, which she paid from the rental income from that property, did not contradict the agreement.

¶ 34    Husband also failed to meet his burden to show that wife's mortgage payments for Pinewood and Fairplay clearly or unambiguously indicated a mutual intent to abandon the agreement.  *See* § 14-2-309(1)(a); *see also Young*, 682 P.2d at 1236. In his response to wife's motion to enforce, husband asserted that the parties acted inconsistently with the agreement based on wife's admission that she, not husband, paid the mortgages for Pinewood and Fairplay.  Her admission was part of her answer to an interrogatory concerning her "day-to-day operations of [her] rental properties."  In her reply, she said that husband "should have been paying" the Pinewood mortgage according to the agreement, but that he had failed to do so.  Because husband did not pay those mortgages, wife said that she paid them to protect her interests in Pinewood and Fairplay under the agreement and to preserve those marital assets, and that her payment of the Pinewood and Fairplay mortgages did not indicate that she intended to abandon the agreement.

¶ 35    Moreover, neither in the court nor on appeal did husband cite any specific authority to support his claim that wife's payments of the Pinewood and Fairplay mortgages established a mutual intent

14

to abandon the agreement because such payments were inconsistent with the agreement's language saying that he was responsible for paying those mortgages. *See Zander*, ¶ 27, 486 P.3d at 357 (explaining that an appellate court will not consider an argument not supported by legal authority or any meaningful legal analysis); *see also In re Marriage of Dean*, 2017 COA 51, ¶ 31, 431 P.3d 246, 252 (noting that an appellate court will not consider arguments in a reply brief that seek to expand on contentions raised in an opening brief).

¶ 36     Further, Husband seeks to incorporate by reference into his opening brief his response to wife's motion to enforce. We decline to address any contentions contained in his response but not in his opening brief. *See* C.A.R. 28(a)(7)(B) (requiring arguments in a brief to contain contentions and reasoning, with citations to the authorities and parts of the record on which the appellant relies); *see also* C.A.R. 57 ("Incorporation by reference of briefs previously filed in the lower court is prohibited."); *Castillo v. Koppes-Conway*, 148 P.3d 289, 291 (Colo. App. 2006) (Incorporation by reference "is improper because it attempts to shift — from the litigants to the

appellate court — the task of locating and synthesizing the relevant facts and arguments.").

## D. Health Insurance

¶ 37     Husband contends that the court erred by ordering him to provide lifetime health insurance for wife, even though he stipulated to do so in the agreement. We agree.

¶ 38     The agreement includes a subsection under maintenance requiring husband, upon dissolution, to pay for wife's health insurance for life. But in the motion to enforce, wife focused on the property division and did not request enforcement of the maintenance provision, including the health insurance requirement. Moreover, wife represented in her reply in support of the motion to enforce that the parties agreed the maintenance provision was unenforceable. And during the permanent orders hearing, wife's counsel asserted that she was not asking the court to enforce the health insurance subsection because it conflicted with federal law. Additionally, in her closing argument, wife's counsel did not request that husband be ordered to pay for wife's health insurance.

16

¶ 39    The court's order requiring husband to provide lifetime health insurance to wife was improper because, not only did she fail to seek enforcement of that provision during the proceedings, but she expressly asserted that the order was unenforceable under federal law. While she suggests in her answer brief that the order is proper under the Colorado maintenance statute, she did not include the cost of her health insurance as part of her reasonable needs when the court awarded her $11,000 per month in maintenance, as she requested. Nor has she identified in the record where the court was otherwise presented with information regarding the cost of her health insurance.

¶ 40    We reverse that portion of the judgment and remand the case to the court to vacate the health insurance requirement from the permanent orders. Because the agreement includes a severability clause, this reversal does not impact the validity of the rest of the agreement.

### III.    Property Division

#### A.    Standard of Review

¶ 41    A district court has great latitude to make an equitable property division based on the facts and circumstances of each

case, and we will not disturb its decision absent an abuse of discretion. *In re Marriage of Collins*, 2023 COA 116M, ¶ 19, 544 P.3d 1258, 1267; *see* § 14-10-113(1), C.R.S. 2024. "The property division must be equitable, but not necessarily equal." *In re Marriage of Wright*, 2020 COA 11, ¶ 3, 459 P.3d 757, 759; *see In re Marriage of Gallo*, 752 P.2d 47, 55 (Colo. 1988) ("The key to an equitable distribution is fairness, not mathematical precision."). A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misconstrues or misapplies the law. *In re Marriage of Fabos*, 2022 COA 66, ¶ 16, 518 P.3d 297, 301-02.

## B. Relevant Law

¶ 42    A court must conduct a multi-step analysis when it allocates marital property. *LaFleur v. Pyfer*, 2021 CO 3, ¶ 63, 479 P.3d 869, 885. The court (1) must determine whether an interest is property; (2) if so, it must classify the property as marital or separate; and (3) it must value the marital property and determine an equitable distribution of such property. *Id.*

¶ 43    In making an equitable distribution, the court must consider all relevant factors, including, as relevant here, each spouse's

18

contribution to the acquisition of the marital property, including the contribution of a spouse as homemaker, and each spouse's economic circumstances. § 14-10-113(1)(a), (c); *In re Marriage of Evans*, 2021 COA 141, ¶ 50, 504 P.3d 988, 998.

¶ 44 The weighing of those factors is within the court's sound discretion. *In re Marriage of Powell*, 220 P.3d 952, 959 (Colo. App. 2009). The court need not make specific findings as to each factor so long as its findings allow us to determine whether its decision is supported by competent evidence. *Collins*, ¶ 19, 544 P.3d at 1267.

### C. Discussion

#### 1. Tax Returns

¶ 45 Husband contends that the court erred by requiring the parties to file their taxes for 2019 through 2021 as married filing separately rather than jointly. We are not persuaded.

¶ 46 To protect herself financially, wife asked the court to order the parties to file taxes as married filing separately for the years 2019 through 2021. She testified that husband had previously "lied" on their joint business tax returns, which had resulted in audits. She recalled a warning from an IRS agent, who stressed that any future

misrepresentations could lead to criminal charges and possible jail time.

¶ 47 In the permanent orders, the court instructed the parties to file their tax returns for the years 2019 through 2021 as married filing separately.

¶ 48 Because wife's testimony supports the court's decision, we cannot say the court abused its discretion by ordering the parties to file as married filing separately. *See In re Marriage of Thorburn*, 2022 COA 80, ¶ 49, 519 P.3d 736, 744 (explaining that credibility determinations and the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom, are matters within the court's sole discretion); *see also In re Marriage of Amich*, 192 P.3d 422, 424 (Colo. App. 2007) (noting that the district court can believe all, part, or none of a witness's testimony, even if uncontroverted).

## 2. Husband's Commissions

¶ 49 Husband also contends that the court's award to wife of one-half of his commissions earned from projects sold before entry of the dissolution decree but installed after the decree was inequitable. We disagree.

¶ 50    Compensation received or fully earned during marriage is marital property subject to equitable distribution. *See In re Marriage of Sewell*, 817 P.2d 594 (Colo. App. 1991); *see also In re Marriage of Huston*, 967 P.2d 181 (Colo. App. 1998) (concluding that compensation deferred until after the dissolution, but fully earned during the marriage, is marital property); *In re Marriage of Cardona*, 321 P.3d 518, 522 (Colo. App. 2010) (holding that income earned from separate property during the marriage is marital property), *aff'd*, 2014 CO 3, 316 P.3d 626.

¶ 51    The court found that, as of the date of the dissolution decree, husband had earned, but had not yet received, a portion of his income. His income was entirely commission-based. He received half of his commission when a project was "sold" and the other half when the project was "installed." If a customer canceled the project before installation, husband was required to return the initial half of the commission he had received. The court also found that, due to prevailing economic conditions, including supply chain disruptions and other issues, the time between sales and installations had increased, and that this delay led to a higher-than-usual percentage of orders being canceled. The court

determined that wife was entitled to one-half of husband's commissions received after the date of the decree, even if those commissions resulted from sales he made before the decree.

¶ 52    Because husband had an enforceable right to his commissions, the court correctly awarded wife a share of those commissions. *See Huston*, 967 P.2d at 184 (holding that earnings or payments derived from work performed during the marriage are marital property, subject to equitable distribution upon dissolution); *see also In re Marriage of Turner*, 2022 COA 39, ¶ 18 n.1, 513 P.3d 407, 411 n.1 (noting that whether a bonus is an enforceable right depends heavily on the court's assessment of credibility, and because the court found the wife's employer credible, "we must conclude that the record supports the finding that [she] did not yet have an enforceable right to the bonus"); *Sewell*, 817 P.2d at 596 (deciding that district court properly divided as marital property income that the husband had earned during the marriage but that he had not yet received at the time of the permanent orders).

¶ 53    Nonetheless, husband asserts that the court should have issued "corresponding [o]rders" providing guidance on how to

address a customer cancellation that necessitated a "return" of a commission. Because husband does not direct us to where in the record he raised this specific issue, it is not preserved and may not be raised for the first time on appeal. *See In re Marriage of Turilli,* 2021 COA 151, ¶ 12, 507 P.3d 83, 87 (holding that an issue is preserved for appeal when it is brought to the court's attention and the court ruled on it); *see also In re Marriage of Garrett,* 2018 COA 154, ¶ 35, 444 P.3d 812, 819 (holding that issues not raised before the district court will not be addressed for the first time on appeal); *Brody v. Hellman,* 167 P.3d 192, 199 (Colo. App. 2007) (holding that an issue that is not pursued during the hearing on permanent orders or through disposition is abandoned for appeal). Accordingly, we decline to address the merits of this assertion. *See Garrett,* ¶ 35, 444 P.3d at 819.

¶ 54    We similarly reject husband's related contention that the court failed to address the potential tax liabilities arising from his commission payments to wife. He does not tell us where in the record he specifically informed the court of these potential liabilities or provided any calculations for the court to consider. Because the court had no obligation to consider hypothetical tax implications,

we cannot say that the court abused its broad discretion by ordering husband to pay wife a share of the subject commissions. *Collins*, ¶ 19, 544 P.3d at 1267; *see also In re Marriage of Dale*, 87 P.3d 219, 226 (Colo. App. 2003).

### 3. Personal Property and Marital Property Located Inside the Marital Residence

¶ 55    Husband argues that the court erred by dividing the parties' personal property and marital property located inside the marital residence. We disagree.

¶ 56    Husband sought an order allowing him to retrieve certain personal belongings and marital property from the marital residence. He presented two demonstrative exhibits listing specific items of personal and sentimental value to him that he wished to have, along with an inventory of the remaining marital property inside the residence.

¶ 57    Wife testified that husband had already received his personal property and a fair share of the marital assets.

¶ 58    The court ordered wife to return to husband personal items such as husband's birth certificate, social security card, grandparents' rings, and sports awards. However, the court said it

24

lacked sufficient evidence to accurately value and divide the remaining personal items and marital property in the residence. It encouraged the parties to cooperate and allow husband to retrieve his belongings and a fair share of the marital property from the residence.

¶ 59 We discern no error because husband failed to provide adequate evidence for the court to properly value and divide the disputed property. *See In re Marriage of Rodrick*, 176 P.3d 806, 815 (Colo. App. 2007) (noting that it is the parties' duty to present the district court with the requisite data to value property, and any failure in that regard should not provide them with grounds for review); *see also In re Marriage of Eisenhuth*, 976 P.2d 896, 901 (Colo. App. 1999) (explaining that the district court considers the evidence presented to it).

IV. Medical Escrow Account

¶ 60 Husband argues that the court erred by ordering him to establish a $25,000 medical escrow account to cover wife's future medical expenses related to injuries that she sustained from his domestic violence during the marriage. He reasons that the court

should not have considered a hypothetical, not-yet-incurred medical debt. We conclude that any error was harmless.

¶ 61 Wife testified about a planned spinal procedure at the Mayo Clinic and said the parties had saved for it. She added that the medical procedure was a result of husband's domestic violence. It was undisputed, however, that the parties had not incurred any debt to the Mayo Clinic at the time of permanent orders. The court therefore erred by ordering the establishment of a medical escrow account for a non-existent and potentially hypothetical future debt. *See* § 14-10-113(5) (providing that a district court is required to divide the marital property or debt based on its value at the time of the decree or the hearing on the disposition of property).

¶ 62 But when viewed in relation to the overall property division, an error in dividing a nonexistent marital debt is reversible only if the error affects the parties' substantial rights. *See* C.A.R. 35(c); *see also In re Marriage of Balanson*, 25 P.3d 28, 36 (Colo. 2001). "An error affecting only a small percentage of the overall marital estate is harmless . . . ." *In re Marriage of Zappanti*, 80 P.3d 889, 893 (Colo. App. 2003).

¶ 63    The assumed error of $25,000 represents less than 1% of the $2.2 million marital estate.  Such a small percentage does not warrant reversal of the court regarding the establishment of the medical escrow account.  *See id.*  We note that the medical escrow account is specifically designated for treatment of wife's neck condition and limited to expenses not reimbursed by health insurance, and that any funds remaining in the account after five years must be returned to husband.

## V.    Maintenance

### A.    Standard of Review

¶ 64    The court has broad discretion to award maintenance, if any, that is fair and equitable to both spouses based on the totality of the circumstances.  § 14-10-114(3)(e), C.R.S. 2024; *see also In re Marriage of Vittetoe*, 2016 COA 71, ¶ 14, 488 P.3d 103, 106.  We will not disturb the court's maintenance award absent an abuse of that discretion.  *See In re Marriage of Medeiros*, 2023 COA 42M, ¶ 58, 534 P.3d 531, 542.

## B.    Relevant Law

¶ 65     Section 14-10-114(3) sets forth the specific process a court must follow when considering a maintenance request.  *Wright*, ¶ 13, 459 P.3d at 761.

¶ 66     The district court must first make findings regarding, as relevant here, the requesting party's reasonable financial need as established during the marriage and the tax deductibility of maintenance.  § 14-10-114(3)(a)(I)(C)-(E); *see Wright*, ¶ 14, 459 P.3d at 761.  The court then determines an amount and term of maintenance that is fair and equitable to the parties. § 14-10-114(3)(a)(II); *Wright*, ¶ 15, 459 P.3d at 761.

¶ 67     Although the court generally must also consider the guideline amount and term of maintenance under section 14-10-114(3)(b)(I) and (3)(b)(II), those guidelines do not apply when, as here, the spouses' combined annual adjusted gross income exceeds $240,000.  § 14-10-114(3.5); *In re Marriage of Herold*, 2021 COA 16, ¶ 26, 484 P.3d 782, 787.  But the court may still consider the guidelines under these circumstances.  *See* § 14-10-114(3.5).  In this context, the court must determine the appropriate amount of

maintenance based on the statutory factors set forth in section 14-10-114(3)(c). *See* § 14-10-114(3.5).

¶ 68 The court is not required to make specific factual findings on each factor, so long as its decision gives the reviewing court a clear understanding of the basis of its order. *See In re Marriage of Stradtmann*, 2021 COA 145, ¶ 32, 506 P.3d 77, 83; *see also* § 14-10-114(3)(e) ("The court shall make specific written or oral findings in support of the amount and term of maintenance awarded pursuant to this section or an order denying maintenance.").

¶ 69 The last step is for the court to determine whether the requesting spouse qualifies for maintenance, meaning that the spouse lacks sufficient property, including awarded marital property, to provide for the spouse's reasonable needs and is unable to support himself or herself through appropriate employment. *See* § 14-10-114(3)(a)(II)(C), (3)(d); *Wright*, ¶ 16, 459 P.3d at 761-62.

## C.    Discussion

¶ 70 Husband contends that the court erred in its calculation of maintenance because (1) the record does not support its finding that wife's reasonable needs were $18,000 per month under section

29

14-10-114(3)(a)(I)(D); and (2) it did not make a finding on the tax implications of the award under section 14-10-114(3)(a)(I)(E), (c)(XII).  We are not persuaded.

¶ 71    The court found that the parties had a "very high standard of living" during the marriage and that wife's reasonable needs amounted to $18,000 per month.  A CPA who managed the parties' day-to-day finances for nine months testified that wife's "expenses" were approximately $18,000 per month.  Wife said that such amount was her reasonable monthly need, although, in her sworn financial statement filed a week before the issuance of the permanent orders, wife indicated that her overall monthly expenses were approximately $30,076.  *See Udis*, 780 P.2d at 504; *see also In re Marriage of Plesich*, 881 P.2d 379, 381 (Colo. App. 1994) (appellate court must view the evidence in the light most favorable to the district court's order).  Because the record supports the court's finding, we will not disturb it.  *See Young*, ¶ 8, 497 P.3d at 528.

¶ 72    Nor are we persuaded by husband's insistence that the court did not consider "the significant state and federal taxes that [he] is required to pay on his income before he provides any spousal

maintenance to [w]ife." The court ordered that the maintenance award would not be deductible by husband or taxable to wife. But husband points to nothing in the record indicating he told the court what the significant tax implications would be. *See Dale*, 87 P.3d at 226.

## VI. Child Tax Dependency Exemption

¶ 73 Husband contends, and we agree, that the court did not allocate the dependency tax exemption for the minor child. Section 14-10-115(12), C.R.S. 2024, requires the court to allocate the dependency tax exemption between the parents in proportion to their contributions to the expenses of raising the child. *S.F.E. in Interest of T.I.E.*, 981 P.2d 642, 648 (Colo. App. 1998). The court never addressed the issue even though wife agreed to an allocation of the tax deduction.

¶ 74 We reverse the judgment concerning this issue. On remand, the court should allocate the exemption between the parties as section 14-10-115(12) requires. *See S.F.E.*, 981 P.2d at 648.

## VII. C.R.C.P. 70

¶ 75 Finally, husband contends that the court erred by denying his forthwith motion pursuant to C.R.C.P. 70, in which he sought to

compel wife to sign releases for SBA records related to certain COVID-relief loans. We conclude that the issue is now moot.

¶ 76 In his motion, husband specifically requested that the court order wife to sign the releases by April 17, 2023, to allow him to meet a deadline for filing formal disputes with the SBA. That deadline has long since passed. Therefore, because any order compelling wife to sign the releases at this point would have no practical legal effect, we dismiss as moot this part of husband's appeal. *See In re Marriage of Thomas*, 2021 COA 123, ¶ 21, 501 P.3d 290, 294 (explaining that an issue is moot when the relief requested, if granted, would have no practical effect on an existing controversy).

## VIII. Appellate Attorney Fees and Costs

¶ 77 Wife asks us to order husband to pay her appellate attorney fees under section 13-17-102, C.R.S. 2024, asserting that the appeal lacks substantial justification. Given our disposition, we deny her request.

¶ 78 Husband requests an award of his appellate attorney fees under C.A.R. 39.1, based on wife's alleged failure to comply with C.R.C.P. 16.2(e)'s financial disclosure requirements regarding the

SBA loans. We deny the request because the court's order lacks any factual finding that wife violated C.R.C.P. 16.2.

## IX.  Disposition

¶ 79     The portion of the judgment requiring husband to pay for wife's health insurance is reversed. That requirement is vacated from the permanent orders. The portion of the judgment concerning the child tax exemption is also reversed, and we remand the case for an allocation of the exception, as section 14-10-115(12) requires. The judgment is otherwise affirmed.

¶ 80     Husband's challenge to the court's denial of his C.R.C.P. 70 motion is dismissed as moot.

JUDGE JOHNSON and JUDGE MOULTRIE concur.