25CA0497 Estate of Wallace 03-26-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0497
Garfield County District Court No. 24PR30075
Honorable John F. Neiley, Judge

In re the Estate of Alexander James Wallace, a/k/a Alex Wallace, a/k/a Alexander Wallace, deceased.

Isabella Guttman,

Appellant,

v.

Theresa Wallace and Todd Wallace,

Appellees.

APPEAL DISMISSED

Division V
Opinion by JUDGE WELLING
Tow and Lipinsky, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 26, 2026

Garfield & Hecht, P.C., Eric D. Musselman, Aspen, Colorado, for Appellant

Judson C. Hite, Attorney P.C., Judson C. Hite, Boulder, Colorado, for Appellees

¶ 1    Isabella Guttman appeals the trial court's order determining that she and the decedent, Alex Wallace, were never common law married. We dismiss the appeal for lack of jurisdiction.

## I.    Background

¶ 2    The decedent died on September 7, 2024. After his death, Guttman filed an application for informal appointment of personal representative of his estate (PR application), listing herself as the decedent's spouse. The trial court informally appointed Guttman as personal representative of the decedent's estate.

¶ 3    Soon after Guttman's informal appointment as personal representative, the decedent's parents, Todd Wallace and Theresa Wallace (the Wallaces),[1] filed a petition for formal testacy proceedings (the Wallaces' petition). In their petition, the Wallaces sought revocation of Guttman's appointment as personal representative, arguing that the decedent and Guttman were never married. In full, the Wallaces' petition sought (1) revocation and termination of Guttman's appointment as personal representative; (2) an injunction against Guttman acting as personal

---

[1] For clarity we will refer to the decedent's parents as "the Wallaces" and will refer to Alex Wallace as the decedent.

representative; (3) opening of formal testacy proceedings; (4) a finding that the decedent died intestate; (5) a determination of the decedent's heirs; and (6) formal appointment of Todd Wallace as personal representative.

¶4 The trial court conducted a one-day evidentiary hearing on whether the decedent and Guttman were common law married. The trial court heard testimony from the decedent's and Guttman's respective friends and family, as well as from Guttman, about the status of their relationship. Following the hearing, the trial court issued an order (the common law marriage order) finding that the decedent and Guttman were never common law married. Further, the trial court found that, based on its common law marriage ruling, Guttman lacked standing to pursue a probate case.

¶5 In its common law marriage order, the trial court didn't appoint a new personal representative, open formal testacy proceedings, formally find that the decedent died intestate, or determine the decedent's heirs. Nor did the trial court enjoin Guttman from carrying out the powers and duties of a personal representative.

¶ 6 In the wake of the common law marriage order, Guttman filed a notice of a claim against the decedent's estate relating to various credit card, car, and property payments. The Wallaces filed a forthwith motion directing Guttman to surrender any estate property in her possession. The trial court ruled that the Wallaces' forthwith motion was premature, reasoning that it hadn't yet ruled on the remaining issues raised in the Wallaces' petition. But the trial court enjoined Guttman from making any further estate distributions.

¶ 7 Guttman then filed a motion asking the trial court to amend its findings and judgment in the common law marriage order. Before the trial court ruled on that motion, however, Guttman filed this appeal, in which she challenges the trial court's common law marriage order. Guttman didn't seek a C.R.C.P. 54(b) certification of the common law marriage order before filing her appeal, however.

¶ 8 The Wallaces filed a motion in this court seeking to dismiss Guttman's appeal, arguing that the trial court's common law marriage order wasn't a final appealable order because it didn't resolve all the requests set forth in the Wallaces' petition. In their motion to dismiss, the Wallaces framed the relevant proceeding for

determining finality under *Scott v. Scott*, 136 P.3d 892 (Colo. 2006), as being defined by Guttman's PR application and the Wallaces' petition.

¶ 9    In response to the motion to dismiss, Guttman argued that the trial court's common law marriage order was final because it determined that she lacked standing to pursue a probate case and thus there was nothing further for the trial court to do to determine her rights related to the estate.  She further argued that the common law marriage order was final because, four weeks after filing the notice of appeal, she filed a "Motion for Order Confirming Judgment" with the trial court to obtain an order "affirming that the judgment [determining the status of common law marriage] is final and thus appealable pursuant to C.R.C.P. 59(k) and C.A.R. 4(a)."[2] The trial court never ruled on Guttman's motion for order confirming judgment, however.

¶ 10    A motions division of this court deferred ruling on the motion to dismiss and ordered the parties to address in their merits briefs

---

[2] In her motion for order confirming judgment that Guttman filed with the trial court, she didn't cite, invoke, or otherwise reference C.R.C.P. 54(b).

4

"the jurisdictional issue raised in the motion to dismiss — namely, finality of the order being appealed."

¶ 11    Seven weeks after filing their motion to dismiss, the Wallaces filed a motion for limited remand, requesting that this court remand this case to the trial court for the limited purpose of allowing the court to fully rule on the issues raised in the Wallaces' petition. Guttman objected and again argued that the common law marriage order was final because she had requested that the trial court so find.  She did not provide an order of the trial court granting her request because no such order existed.

¶ 12    This court denied the Wallaces' motion for limited remand, concluding that "it does not appear that the [trial] court is currently divested of jurisdiction to address the matters raised in the motion for limited remand which have not yet been resolved by the [trial] court."  *See Musick v. Woznicki*, 136 P.3d 244, 246 (Colo. 2006) ("We hold that a trial court is not divested of jurisdiction when a party files a premature notice of appeal of a nonfinal judgment.").

## II.    Analysis

¶ 13    On appeal, Guttman contends that the trial court erred when it found that she and the decedent weren't common law married.

Conversely, the Wallaces contend that the trial court's determination was correct (and urge us to reach the merits of this issue). We, however, conclude that we lack jurisdiction over this appeal because the common law marriage order wasn't a final appealable order and, therefore, dismiss this appeal.

## A. Legal Principles

¶ 14 We must independently determine our jurisdiction over an appeal. *See, e.g., Chavez v. Chavez*, 2020 COA 70, ¶ 22. This court has "initial jurisdiction over appeals from final judgments of[] and interlocutory appeals of certified questions of law in civil cases from[] the district courts." § 13-4-102(1), C.R.S. 2025. "An appeal to the appellate court may be taken from . . . a final judgment of any district, probate, or juvenile court in all actions or special proceedings whether governed by these rules or by the statutes . . . ." C.A.R. 1(a)(1).

¶ 15 Probate cases are subject to the same finality rules as other civil cases, in that "an order of the probate court is final if it ends the particular action in which it is entered and leaves nothing further for the court pronouncing it to do in order to completely determine the rights of the parties as to that proceeding." *Scott,*

136 P.3d at 896. An unsupervised administration of an estate may involve multiple proceedings, and each proceeding is independent of every other proceeding. *Id.*; § 15-12-107(1)(a), C.R.S. 2025. Independent proceedings are initiated by a petition, and such petition defines the scope of the proceeding. *Scott*, 136 P.3d at 896.

¶ 16 Although some probate proceedings involve only a single claim and are concluded upon the trial court's resolution of the proceeding's sole issue, *see, e.g.*, *In re Estate of Gadash*, 2017 COA 54, ¶ 36 (concluding that two petitions for two separate claims initiated independent proceedings and the district court's order resolving one of those claims was final as to that claim only), a single proceeding often involves multiple claims, *see Scott*, 136 P.3d at 896-97 (recognizing the "unique circumstances presented by probate actions" when it comes to determining the scope of proceedings).

¶ 17 "The probate code does not provide a specific rule authorizing interlocutory appeal, so the civil rules control, and C.R.C.P. 54(b) provides a clear procedural pathway for interlocutory appeal." *Scott*, 136 P.3d at 897.

> When more than one claim for relief is presented in an action . . . the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates *fewer than all the claims or the rights and liabilities of fewer than all the parties* shall not terminate the action as to any of the claims, or parties . . . .

C.R.C.P. 54(b) (emphasis added).

¶ 18    In other words, if a party wishes to appeal an order before a lower court has resolved every issue in the proceeding, the party must obtain a Rule 54(b) certification. *See Scott,* 136 P.3d at 898 ("When confronted with circumstances where the jurisdiction of the court of appeals is uncertain, [the supreme court] ha[s] generally required [R]ule 54(b) certification.").

## B.    Application

¶ 19    To the extent the parties briefed finality, they focused on Guttman's PR application as the petition that defined the scope of the proceeding being appealed. We, however, decline to conduct

8

our analysis under this framework.[3]  Rather, we view the Wallaces'

petition as the petition that defines the scope of the proceeding

before us.  Because the common law marriage order didn't resolve

the issues raised in the Wallaces' petition — and because Guttman

failed to take other viable options to have the common law marriage

order properly certified for our review — we must dismiss this

appeal for a lack of jurisdiction.

### 1.   Guttman's Informal Appointment as Personal Representative Was an Independent Proceeding

¶ 20    As noted above, the Wallaces frame Guttman's PR application

as the petition that defined the scope of the proceeding on appeal.

They argue that because Guttman's PR application and the

Wallaces' petition had overlapping subject matter — a challenge to

Guttman's appointment as personal representative — they were

---

[3] Typically, we adhere to the party presentation principle — where we rely on the parties to properly frame the issues to be decided. *Galvan v. People*, 2020 CO 82, ¶ 45.  "This principle, however, does not prevent a court from properly characterizing an issue that has been improperly characterized by a party." *Lucero v. People*, 2017 CO 49, ¶ 26.  Further, our independent duty to determine our jurisdiction to hear an appeal takes priority over party presentation concerns.  *See People v. S.X.G.*, 2012 CO 5, ¶ 9 ("Because we must always satisfy ourselves that we have jurisdiction to hear an appeal, we may raise jurisdictional defects [nostra] sponte, regardless of whether the parties have raised the issue.").

9

part of the same proceeding. *See id.* at 897 ("When the subject matter of two petitions overlap, it would generally be appropriate to consider both petitions as belonging to the same proceeding." (quoting *In re Estate of Newalla*, 837 P.2d 1373, 1377 (N.M. Ct. App. 1992))). Thus, the Wallaces argue, because the trial court didn't resolve the claims presented in the Wallaces' petition, the common law marriage order wasn't final, and we must dismiss this appeal.

¶ 21 Guttman, on the other hand, doesn't clearly articulate which pleading she believes is the initial petition that defined the scope of the proceeding on appeal. Despite her unclear stance, Guttman contends that the trial court's order was final because there was nothing further for the trial court to address "related to [her] request for appointment as personal representative of the estate based on common law marriage."

¶ 22 We aren't persuaded that Guttman's PR application was the petition that defined the scope of the proceeding on appeal.

¶ 23 "A proceeding for appointment of a personal representative is concluded by an order making or declining the appointment." § 15-12-107(1)(d). Accordingly, the proceeding that Guttman's PR

application initiated concluded when the trial court informally appointed her as personal representative. *See* § 15-12-307(2), C.R.S. 2025 ("The status of personal representative and the powers and duties pertaining to the office are fully established by informal appointment.").

¶ 24 Because the initial personal representative proceeding concluded before the Wallaces filed their petition in which they contested the existence of a common law marriage, the trial court's common law marriage order couldn't have been part of that proceeding.

## 2. The Trial Court's Common Law Marriage Order Wasn't a Final Order Under *Scott*

¶ 25 After Guttman's personal representative proceeding concluded, the Wallaces' petition initiated the next proceeding. As previously discussed, that petition defined the scope of the proceeding by requesting that the trial court do six things: (1) revoke and terminate Guttman's appointment as personal representative; (2) enjoin Guttman from acting as personal representative; (3) open formal testacy proceedings; (4) find that the decedent died intestate;

11

(5) determine the decedent's heirs; and (6) formally appoint Todd Wallace as personal representative.

¶ 26 The issue of whether Guttman and the decedent were common law married was a threshold matter that the trial court needed to resolve before it could reach and properly determine several of the issues raised in the Wallaces' petition. Indeed, the thrust of the Wallaces' argument that Guttman's personal representative appointment should be revoked and terminated was that her claim to be the decedent's wife was "fraudulent." Thus, this proceeding included the subsequent hearing and order addressing whether decedent and Guttman were common law married.

¶ 27 The common law marriage order, however, determined only that Guttman and decedent weren't common law married and that Guttman "lack[ed] standing to pursue the probate case." The order didn't completely address all the issues raised in the Wallaces' petition. Even with a finding that Guttman lacked standing to pursue a probate case, the trial court stopped short of formally enjoining her from exercising any duties or powers of a personal

representative.[4]  Indeed, in its later order on the Wallaces' forthwith motion, the trial court acknowledged that it hadn't made any of the requisite findings on this issue.

¶ 28    Thus, the trial court's common law marriage order isn't a final order that we can review absent a proper Rule 54(b) certification. And the record reflects that neither party pursued, much less obtained, such a certification.

### 3.    Attorney Fees

¶ 29    Finally, the Wallaces contend that they are entitled to an award of the attorney fees they incurred on appeal "because the judgment of the [d]istrict [c]ourt was so plainly correct and the legal authority contrary to [Guttman's] position so clear that there is really no appealable issue."  In other words, the Wallaces request their fees based on the strength of the merits of the trial court's common law marriage ruling.  But because we don't reach the

---

[4] We acknowledge that the trial court later ordered Guttman to "refrain from exercising her power (to the extent it still exists) to make any further distribution of the estate during the pendency of the formal proceeding."  Although the court issued this order before Guttman filed her notice of appeal (and therefore is properly part of our finality analysis), it still didn't address the remaining issues raised in the Wallaces' petition.

merits of whether a common law marriage existed, we deny the Wallaces' request for an award of appellate attorney fees.

## III.   Disposition

¶ 30    For the reasons set forth above, we dismiss this appeal without prejudice for lack of jurisdiction.

JUDGE TOW and JUDGE LIPINSKY concur.